214 P.3d 1082

**In the Interest of TC, a Minor.**

No. 28295.

Intermediate Court of Appeals of Hawai'i.

June 24, 2009.

As Corrected June 25 and June 26, 2009.

Taryn R. Tomasa, Deputy Public Defender, on the briefs, for Minor–Appellant.

Christopher J. Roehrig (Roehrig Roehrig & Wilson), Kamuela, on the briefs, for Parents–Appellants.

Linda L. Walton, Deputy Prosecuting Attorney, on the briefs, for Plaintiff–Appellee.

NAKAMURA, Presiding Judge, FUJISE and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Minor–Appellant (**TC**) and his parents (**Parents**) appeal from the Decree Re: Law Violation Petitions filed on September 26, 2006 (**Decree**), and the Findings of Fact, Conclusions of Law and Order Denying Motion for Reconsideration filed December 19, 2006 (**Reconsideration Order**) in the Family Court of the Third Circuit (**Family Court**).[1]

After a hearing based on evidence that was stipulated into the record, TC was adjudicated to have committed acts, prior to reaching eighteen years of age, which would constitute violations of Hawai'i sexual assault laws prohibiting certain sexual conduct involving persons who are less than fourteen-years old. Based upon our review of the record and the briefs submitted by the parties, and having given due consideration to the issues raised, arguments advanced, the relevant rules, statutes, constitutional provisions, and case law, we hold that: (1) there was insufficient evidence to support the allegation that TC engaged in prohibited sexual conduct with his younger brother; (2) any person who is alleged, pursuant to Hawaii Revised Statutes (**HRS**) § 571–11(1), to have committed an act prior to achieving eighteen years of age which would constitute a violation of law (as described in HRS § 571–11(1)) shall be advised of his or her right to testify and, in every HRS § 571–11(1) adjudication in which the accused minor does not testify, a family court must engage in an age-appropriate colloquy with the accused minor to obtain an on-the-record waiver of that right; (3) parents of an accused minor have standing throughout juvenile proceedings conducted pursuant to HRS § 571–11(1); (4) minors under the age of fourteen are subject to adjudication for violations of HRS §§ 707–730(1)(b) and 707–732(1)(b), which prohibit certain sexual conduct involving minors under the age of fourteen; (5) TC's Due Process and Equal Protection Clause rights were not violated when an HRS Chapter 571 petition was filed against him but not against two other minors who also admittedly engaged in prohibited sexual conduct with TC, who was also a minor under the age of fourteen at the time of the sexual activities; (6) there is no fundamental personal privacy right for minors under the age of fourteen to engage in sexual activities with other children under the age of fourteen; and (7) Parents' argument that the Family Court erred in denying their request to cross-examine the makers of certain written reports is waived. For these reasons, we reverse as to Count VI of the petition filed against TC and, because the Family Court did not determine whether TC knowingly and voluntarily waived his right to testify, which we cannot conclude was harmless error, we vacate and remand this matter for further proceedings as to the remaining counts.

## I. *BACKGROUND*

TC was born in September of 1990. In the fall of 2003, another minor (**Child # 1**) alleged that sometime between January of 2003 and October 2003, sexual contact occurred between TC and Child # 1, who was born in April of 1996. Child # 1 told his father about sexual contact with TC and TC's younger brother (**Brother**). Child # 1's father contacted TC's father and informed him of what Child # 1 had told him. TC's father reportedly showed serious concern and said "he would get to the bottom of it and find out

---

1. The Honorable Aley K. Auna, Jr., presided.

what was going on." Child # 1's father also made a report to the Hawaiʻi County Police Department (**HCP**). HCP Detective Aimee Wana (**Det. Wana**) conducted an investigation of the allegations.

TC was twelve-years old at the time of the alleged sexual contact with Child # 1, who was seven-years old. Child # 1's father told Det. Wana that Child # 1 had admitted to him that he sometimes played with himself in a sexual manner. Child # 1 told his father he learned how to do this from TC and Brother, who would drop their pants and show him how to do it. Child # 1 also reported to his father that he had seen pornographic magazine pictures two times while in a "fort" the minors played in at TC's residence. Child # 1 said that while the boys looked at the pictures, TC and Brother would touch him and he would touch them.

Det. Wana contacted Parents and obtained consent to search the "fort" and other areas where the children played. No pornographic pictures were found during the search, but TC's mother told Det. Wana that TC's father had found torn up pornographic pictures earlier that year in their yard and had thrown them away. TC's mother said that the boys told her that they found the pictures on the side of the road a half block from their house.

On October 8, 2003, pursuant to the investigation, Det. Wana observed an interview of Child # 1 conducted by Dr. Terry Fujioka of the Children's Justice Center. Both of Child # 1's parents were present at the interview. During the interview, Child # 1 reportedly described in detail incidents of "touching of private parts" that took place with TC and Brother. Child # 1 stated that he believed that it was "all of us" who decided to do this. Child # 1 recalled that the sexual encounters between Child # 1 and TC began when TC sucked Child # 1's penis with his mouth. Child # 1 admitted that on another occasion, he had sucked TC's penis when TC had asked him to.

Child # 1 also reported engaging in acts of anal penetration with TC. Child # 1 told of how TC had put his penis in his "butt hole." Child # 1 said he told TC to stop it but that he did not stop. Child # 1 also remembered putting his penis in TC's "butt hole" once but did not recall if TC had told him to do it. Child # 1 reported seeing TC and Brother touching each other's penises. Child # 1 said he was told by Brother about two other boys that TC and Brother had or were having sexual contact with. Child # 1 did not allege that force or coercion was involved in the incidents he described.

TC was interviewed by Det. Wana on October 24, 2003. Parents were present during the interview. TC reportedly confirmed that incidents of fellatio and anal penetration had occurred between himself and Child # 1 on several occasions. TC said he had first become aware of sexual behavior when he visited his uncle on Maui and saw pictures on the TV of people engaging in sexual activity and also sometime later when he had found a magazine with pornographic pictures beside the road near Parents' house.

TC reportedly told Det. Wana about sexual touching and anal penetration with another boy (**Child # 2**), who was born in September of 1989. This contact occurred during sleepovers at Child # 2's house and when Child # 2 slept over at TC's house. TC denied sexual contact with any other children or adults.

At the conclusion of the interview, Det. Wana placed TC under arrest for Sexual Assault in the First Degree in violation of HRS § 707–730(1)(b). TC was released to the custody of Parents about one hour later.

At the time of TC's release from police custody, his mother told Det. Wana that TC was "underdeveloped both mentally and emotionally" and had been in "Special Education" since the first grade. She said that TC performed math at about the fifth grade level and reading on the third or fourth grade level even though he was in the seventh grade at that time.

On August 3, 2004, a petition under HRS Chapter 571 (**Petition**) was filed by the Prosecuting Attorney of the County of Hawaiʻi (**State**) in the Family Court. The Petition alleged that TC committed seven counts of Sexual Assault in the First Degree, in viola-

tion of HRS § 707–730(1)(b) (Supp.2002)[2] and three counts of Sexual Assault in the Third Degree, in violation of HRS § 707–732(1)(b) (Supp.2002).[3] TC was alleged to have violated the law as follows:

### COUNT I (H–65210/KN)

Sometime between January 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 1], a person who was less than fourteen years old, by knowing [sic] subjecting [Child # 1] to fellatio, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT II (H–71518/KN)

Sometime between January 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 1], a person who was less than fourteen years old, by knowingly subjecting [Child # 1] to anal intercourse, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT III (H–71519/KN)

Sometime between January 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 1], a person who was less than fourteen years old, by knowingly subjecting [Child # 1] to fellatio, thereby committing the offense of Sexual

Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT IV (H–65210/KN–1)

Sometime between January 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 1], a person who was less than fourteen years old, by knowingly subjecting [Child # 1] to anal intercourse, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT V (H–65210/KN–2)

Sometime between January 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual contact [Child # 1], a person who was less than fourteen years old, or caused [Child # 1] to have sexual contact with him, thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707–732(1)(b), Hawaii Revised Statutes, as amended.

### COUNT VI (H–65210/KN–3)

Sometime between January 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual contact [Brother], a person who was less than fourteen years old, or caused [Brother] to have sexual contact with him, thereby committing the offense of Sexual Assault in the Third Degree, in violation of

**2.** HRS § 707–730(1)(b) provides:

§ **707–730 Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:

. . . .

(b) The person knowingly engages in sexual penetration with another person who is less than fourteen years old;

Although HRS § 707–730 has been the subject of various legislative actions since the dates TC allegedly committed the offenses, none of these actions amended HRS § 707–730(1)(b).

**3.** HRS § 707–732(1)(b) provides:

§ **707–732 Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:

. . . .

(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person;

Although HRS § 707–732 has been the subject of various legislative actions since the dates TC allegedly committed the offenses, none of these actions amended HRS § 707–732(1)(b).

Section 707–732(1)(b), Hawaii Revised Statutes, as amended.

### COUNT VII (H–71471/KN)

On or about December, 1999, through September, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 2], a person who was less than fourteen years old, by knowingly subjecting [Child # 2] to fellatio, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT VIII (H–71520/KN)

On or about December, 1999, through September, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 2], a person who was less than fourteen years old, by knowingly subjecting [Child # 2] to anal intercourse, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT IX (H–71521/KN)

On or about December, 1999, through September, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual penetration [Child # 2], a person who was less than fourteen years old, by knowingly subjecting [Child # 2] to anal intercourse, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707–730(1)(b), Hawaii Revised Statutes, as amended.

### COUNT X (H–65210/KN–4)

On or about December, 1999, through September, 2003, the exact date being unknown, in Kona, County and State of Hawai'i, [TC] knowingly subjected to sexual contact [Child # 2], a person who was less than fourteen years old, or caused [Child # 2] to have sexual contact with him, thereby committing the offense of Sexual Assault in the Third Degree, in violation of

Section 707–732(1)(b), Hawaii Revised Statutes, as amended.

A "stipulated evidence" trial was held between August 26, 2005 and October 4, 2005. Police reports and the report of psychiatrist Dr. Peter In were stipulated into evidence. The stipulation did not discuss waiver of the right to confront and cross-examine witnesses or the right to testify. On October 19, 2005, the Family Court entered its initial Findings of Fact, Conclusions of Law, and Decision, which "incorporated by reference" the stipulated evidence, found that TC committed all of the offenses stated in the Petition, and adjudicated TC as a "Law Violator" as to all counts stated in the Petition. The Family Court ordered that the assigned probation officer prepare a social study and set the matter for a disposition hearing.

Prior to the disposition, Parents filed a demand for examination of makers of written reports, citing HRS § 571–41(d). Parents' demand was opposed by the State on the grounds that Parents do not have standing. The State also argued, if the presence of the report writers was ordered, then Parents should pay all attendant costs including travel expenses and witness fees. TC initially joined in his Parents' demand. Parents' request to examine the makers of reports was denied.

On September 26, 2006, the Family Court entered the Decree which, *inter alia,* placed TC on probation for a period not to exceed his eighteenth birthday with a number of special conditions. On October 11, 2006, Parents filed a motion for reconsideration, which was joined by TC. On December 19, 2006, the Reconsideration Order was entered, denying all requests for relief.

### II. *Points of Error on Appeal*

TC raises three points of error on appeal:

1. There was insufficient evidence to support the conviction on Count VI;

2. The Family Court reversibly erred in failing to establish that TC knowingly, intelligently, and voluntarily waived his constitutional rights to proceed to trial; and

98

3. The Family Court erred in failing to dismiss the Petition, and erred in denying reconsideration, on the grounds that HRS §§ 707–730(1)(b) and 707–732(1)(b) are not intended to apply to children who are themselves under the age of fourteen, the State's selective prosecution of TC violated TC's constitutional protections of due process and equal protection, and, because the alleged acts of sexual contact were consensual, the adjudication violated TC's constitutionally protected right to privacy.

Parents' points of error overlap with TC's third point of error. In addition, Parents contend that the Family Court erred in finding that Parents were not interested parties, did not have standing, and therefore were not entitled to cross-examine the makers of written reports.

### III. Applicable Standards of Review

■ The issue of standing is reviewed *de novo* on appeal. *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 113 Hawai'i 77, 90, 148 P.3d 1179, 1192 (2006). In deciding the issue, this court must consider whether a party's personal stake in the litigation is significant and whether recognition of standing will serve the needs of justice. *See, e.g., Kaho'ohanohano v. State*, 114 Hawai'i 302, 318, 162 P.3d 696, 712 (2007).

■ An appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Nichols*, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (quoting *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). The appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *Nichols*, 111 Hawai'i at 335, 141 P.3d at 982 (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)). "Normally, an issue not preserved at trial is deemed to be waived. But where plain er-

rors were committed and substantial rights were affected thereby, the errors may be noticed although they were not brought to the attention of the trial court." *State v. Fagaragan*, 115 Hawai'i 364, 367–68, 167 P.3d 739, 742–43 (App.2007) (internal quotation marks, citations, and brackets omitted).

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Fields*, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007) (internal quotation marks, citations, and ellipsis omitted).

■ Statutory interpretation is "a question of law reviewable *de novo*." *State v. Levi*, 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). This court is guided by established rules of statutory construction:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Peterson v. Hawaii Elec. Light Co., Inc.*, 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997) (superseded on other grounds) (internal quotation marks and citations omitted; format altered).

Findings of fact are subject to the clearly erroneous standard of review. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. *Inoue v. Inoue*, 118 Hawai'i 86, 92–93, 185 P.3d 834, 840–41 (App.2008).

"A trial court's conclusions of law are reviewed *de novo* under the right/wrong standard." *State v. Adler*, 108 Hawai'i 169, 174, 118 P.3d 652, 657 (2005) (citations omitted).

## IV. DISCUSSION

### A. Count VI

TC argues that there was insufficient evidence to support the adjudication on Count VI of the Petition because TC denied having any sexual contact with Brother and Brother never alleged that TC had sexual contact with him. The State conceded in the written closing argument presented to the Family Court that there was insufficient evidence to support the allegations set forth in Count VI and maintains the same position on appeal. We agree. The only support for this charge is a vague reference made by Child # 1 in his interview with Det. Wana. Therefore, TC's adjudication as to Count VI is reversed.

### B. Whether an On–the–Record Tachibana Colloquy is Required in An Adjudication under HRS § 571–11(1)

On August 25, 2005, a Submission of Stipulated Evidence for Bench Trial (**Submission**) signed by TC, TC's attorney, Parents, and the State was filed in the Family Court. The Submission stated that "through and upon the advice of his attorney," TC agreed to a trial on stipulated evidence.[4] The Submission did not indicate what constitutional rights TC possessed and which rights he waived by proceeding to trial by way of stipulated evidence. At the October 4, 2005 adjudication hearing, the Family Court did not colloquy TC regarding his right to testify or to remain silent. Nor did a colloquy occur regarding any right TC may have had to confront and cross-examine witnesses. As the Family Court reviewed the evidence and orally rendered its decision, it stated in relevant part:

> The Court further understands that in both of these cases involving [TC and Brother], that the parties waive their right to have an actual trial by presenting of live witnesses and other evidence, and instead offer to the Court for its consideration, evidence stipulated .... And that the minors did waive their ability to cross-examine any of the evidence presented by way of stipulation.

Citing, *inter alia*, *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642, TC urges this court to recognize plain error in the Family Court's failing to obtain TC's knowing, voluntary, and intelligent waiver of TC's constitutional rights that he relinquished by proceeding to trial by way of stipulated evidence.

The Hawai'i Supreme Court has long recognized that youthful offenders are protected by the United States and Hawai'i Constitutions at all stages of family court proceedings. *See, e.g., In re Doe*, 62 Haw. 70, 72, 610 P.2d 509, 511 (1980) (*1980 Doe*). However, the supreme court has rejected requests to mandate strict adherence to adult criminal procedures in juvenile proceedings. *Id.* Thus, we must consider what procedural due process rights are applicable to adjudications pursuant to HRS § 571–11(1) (1993) and

---

4. The Submission also stated that TC:

disagrees with the factual allegations in the petition ... on the grounds that the State fails to prove each and every element of the charges contained in the petition beyond a reasonable doubt, and would incorporate all prior and previously made arguments, to include that the Statutes under which the minor was charged contemplates the actor to be an adult and therefore because of his age at the time of the offenses does not admit to having (1) the requisite state of mind for the alleged offense, (2) the capacity, at the time of the offenses, to know right from wrong, and (3) the capacity, at the time of the offense, to conform his conduct to the requirements of the law.

whether TC knowingly and voluntarily waived any such rights.

As recognized in *1980 Doe*, the United States Supreme Court held in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that certain Bill of Rights safeguards, including notice as provided in the Sixth Amendment to the United States Constitution,[5] the right to counsel guaranteed by the Sixth Amendment,[6] the right against self-incrimination guaranteed by the Fifth Amendment,[7] and the right to confrontation and cross-examination guaranteed by the Sixth Amendment,[8] apply in juvenile proceedings in which a juvenile can be imprisoned for a term of years. *1980 Doe*, 62 Haw. at 72, 610 P.2d at 511; *see also, e.g., In re Doe*, 70 Haw. 32, 36–38, 761 P.2d 299, 302–03 (1988) (*1988 Doe*) (discussing Sixth Amendment right to confrontation) (abrogated in part on other grounds by *State v. Moore*, 82 Hawai'i 202, 220–22, 921 P.2d 122, 140–42 (1996) (re foundation required for excited utterance exception to hearsay rule)); *In re Doe*, 77 Hawai'i 46, 49, 881 P.2d 533, 536 (1994) (*1994 Doe*) (recognizing minor's right to representation by counsel in a law violation proceeding). While HRS § 571–11(1) proceedings need not conform with all of the requirements of a criminal trial,[9] such proceedings must "scrupulously maintain standards consistent with fundamental fairness." *1980 Doe*, 62 Haw. at 73, 610 P.2d at 511–12.

Based on the parties' briefs and our own review, it appears that Hawai'i appellate courts have not directly addressed whether a family court in an HRS § 571–11(1) proceeding is required to inform the minor of his or her right to testify, in accordance with *Tachi-bana v. State*, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995), and *State v. Lewis*, 94 Hawai'i 292, 295, 12 P.3d 1233, 1236 (2000).[10] We hold that a juvenile defendant in a law violation proceeding unquestionably has a right to testify on his or her own behalf, as this right is a fundamental constitutional safeguard which is essential to the concept of due process.

In *Tachibana*, the supreme court enunciated the following principles of law:

A defendant's right to testify in his or her own defense is guaranteed by the constitutions of the United States and Hawai'i and by a Hawai'i statute.

The right to testify in one's own behalf arises independently from three separate amendments to the United States Constitution. It is one of the rights guaranteed by the Due Process Clause of the Fourteenth Amendment as essential to due process of law in a fair adversary process.

The right to testify is also guaranteed to state defendants by the Compulsory Process clause of the Sixth Amendment as applied through the Fourteenth Amendment.

Lastly, the opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony, since every criminal defendant is privileged to testify in his or her own defense, or to refuse to do so.

Because the texts of sections 5, 14, and 10 of article I of the Hawai'i Constitution parallel the Fourteenth, Fifth, and Sixth Amendments to the United States Constitution, the right to testify is also guaran-

---

5. "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" U.S. CONST. amend. VI.

6. "In all criminal prosecutions, the accused shall ... have the Assistance of Counsel in his defence." U.S. CONST. amend. VI.

7. "No person ... shall be compelled in any Criminal Case to be a witness against himself[.]" U.S. CONST. amend. V.

8. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. CONST amend. VI.

9. For example, "the absence of a jury trial [is] not necessarily inconsistent with due process concepts applicable to juvenile proceedings." *1980 Doe*, 62 Haw. at 72–73, 610 P.2d at 511 (citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971)).

10. This court has, however, indirectly recognized that a juvenile defendant has a right to testify by recognizing his or her corollary Fifth Amendment right not to testify. *See, e.g., In re Doe*, 107 Hawai'i 439, 450, 114 P.3d 945, 956 (App.2005).

teed by these parallel provisions of the Hawai'i Constitution.

There is also a statutory protection for the right to testify. HRS § 801–2 (1985) states:

> In the trial of any person on the charge of any offense, he [or she] shall have a right ... to be heard in his [or her] defense.

The decision to testify is ultimately committed to a defendant's own discretion. Thus, a defendant's personal constitutional right to testify truthfully in his or her own behalf may not be waived by counsel as a matter of trial strategy, but may be relinquished only by the defendant.

*Tachibana,* 79 Hawai'i at 231–32, 900 P.2d at 1298–99 (internal quotation marks and citations omitted; format altered).

The *Tachibana* court further held that, prospectively, Hawai'i trial courts would be required to engage in an on-the-record colloquy with every criminal defendant to ensure that any waiver of the defendant's right to testify is knowing and voluntary. *Id.* at 233–36, 900 P.2d at 1300–03. Although not addressing the possible application of this rule to juveniles charged as law violators, the supreme court's reasoning for adopting the colloquy approach, as opposed to a "demand rule," supports its application to juvenile law violation proceedings:

> [T]he demand rule advocated by the government is fatally flawed. The demand rule ignores basic realities faced by the defendant and the courts. Many defendants are unaware that they have a constitutional right to testify which no one, not even their lawyer, may take away from them. In addition, the demand rule requires the defendant to ignore the admonishments of counsel, interrupt the trial proceedings, and interject herself, uninvited, into the fray. Such a rule ignores the courtroom reality that defendants who speak out of turn at their own trials are

quickly reprimanded and sometimes banned from the courtroom by the court. To the extent a defendant may have been educated by television to realize that he or she has such a right, as one opinion, on which the government relies, suggested, the defendant still may not know that an objection must be made during trial or that right is forever lost. Further, in *Johnson v. Zerbst* [, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ] the [United States Supreme] Court was unwilling to presume acquiescence in the loss of fundamental rights. In sum, the demand rule requires a defendant to assert a right of which the defendant may not be aware by objecting in a manner the defendant has been told is inappropriate. We decline to adopt a rule which places such burdens on the exercise of a fundamental constitutional right.

*Id.* at 233–34, 900 P.2d at 1300–01 (internal quotation marks and citations omitted; format altered).

 A minor is particularly likely to be unaware of the constitutional right to testify on one's own behalf and particularly vulnerable to the admonitions of counsel—as well as those of parents or other authoritative adults—and the potentially intimidating circumstances of an HRS § 571–11(1) proceeding. It would be unduly burdensome, and inconsistent with the established rule of law in this state, to place a burden on minors to assert their fundamental constitutional rights when the supreme court has determined that this approach is too burdensome to be applied to adults.[11]

 For these reasons, we hold that any person who is alleged, pursuant to HRS § 571–11(1), to have committed an act prior to achieving eighteen years of age which would constitute a violation of law (as described in this statute) shall be advised of his or her right to testify and, in every HRS § 571–11(1) adjudication in which the ac-

---

11. To the extent that the State's argument suggests that TC waived his right to testify because he, his attorney, and his parents signed the Submission, we reject that argument. In *Tachibana,* the supreme court firmly rejected the notion that counsel can waive a defendant's right to testify as a matter of trial strategy. *Tachibana,* 79 Hawai'i at 231–33, 900 P.2d at 1298–99. In this case, there is no evidence in the record that TC's waiver of his right to testify was knowing and voluntary.

cused minor does not testify, a family court must engage in a *Tachibana*-like colloquy to obtain an on-the-record waiver of that right.[12] In doing so, we assume that the family courts will take into account those special concerns that are present when young persons, often with limited experience and education and immature judgment, are involved.

In this case, the Family Court failed to determine whether TC knowingly and voluntarily waived his right to testify. The State has not established, or even argued, that this violation of TC's constitutional right to testify was harmless beyond a reasonable doubt. *See, e.g., Tachibana,* 79 Hawai'i at 240, 900 P.2d at 1307.[13]

### C. *Parents Have Standing*

▮ Prior to addressing TC's and Parents' arguments that the Family Court erred in denying dismissal of the Petition, we will address Parents' argument that they had standing to make arguments and examine certain "witnesses" in the proceedings below.

Generally, the requirements of standing to appeal are: (1) the person must first have been a party to the action; (2) *the person seeking modification of the order or judgment must have had standing to oppose it in the trial court;* and (3) such person must be ... one who is affected or prejudiced by the appealable order. *Kepo'o v. Watson,* 87 Hawai'i 91, 95, 952 P.2d 379, 383 (1998) (quoting *Waikiki Malia Hotel, Inc. v. Kinkai Props., Ltd. P'ship,* 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993) (emphasis added)).

*Keahole Defense Coalition, Inc. v. Bd. of Land and Natural Res.,* 110 Hawai'i 419, 428, 134 P.3d 585, 594 (2006) (internal quotation marks omitted).

In the Reconsideration Order, the Family Court reiterated its earlier ruling that Parents did not have standing, but concluded that the issue was moot because each of Parents' arguments were raised and adopted by TC. Parents contend, however, that throughout the proceeding they maintained that they were interested parties and, as such, had standing. Parents further contend that the Family Court's disregard of their standing became an issue when Parents filed a demand for an examination of makers of written reports, citing HRS § 571–41(d) (1993). Although the record on appeal is not entirely clear, it appears that TC initially joined Parents' demand for examination of makers of reports, but later indicated (through counsel) that he was prepared to go forward with disposition without a contested hearing on the reports. It further appears that, notwithstanding the Family Court's position that Parents did not have standing, Parents participated in TC's adjudication and were represented by counsel throughout.

A wide range of authorities support Parents' assertion of standing in the Family Court proceedings below. Part D. of the Hawai'i Family Court Rules (**HFCR**), entitled Juvenile Proceedings, begins with HFCR Rule 121, which states in part (emphasis added):

(a) *Purpose and scope.* The purpose of these rules is to implement the provisions of the Hawai'i Family Court Act, Chapter 571, Hawai'i Revised Statutes, relating to cases coming under sections 571–11(1) and (2).

(b) *Definitions.* In addition to statutory definitions set forth in HRS section 571–2

---

12. We note that, although HRS § 571–11(1) proceedings are not criminal cases (*see* HRS § 571–1 (1993)), a child adjudicated under HRS § 571–11(1) may be committed to a youth correctional facility for the period of their minority or as otherwise ordered by the court. *See* HRS §§ 571–48 (1993) & 352–9 (Supp.2002). If a minor offender's term of confinement extends beyond the offender's eighteenth birthday, "the offender shall, upon reaching the age of eighteen, be committed to the custody of the department of public safety for the completion of the sentence." HRS § 352–10 (Supp.2002).

13. TC has provided no supporting argument for the proposition that the Family Court erred when it failed to colloquy TC regarding other constitutional rights, including his right to "cross-examine any of the evidence" presented by way of stipulation. Accordingly, this point may be deemed waived. *See* Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7). Moreover, in light of our disposition of the other issues raised, we need not reach this issue.

as used in these rules, unless the context requires another meaning:

. . . .

(6) *"Party"* means a child who is the subject of a court proceeding; or *the parent,* guardian, or legal custodian of such child; or any person or agency denominated by the statute or the court as a party in a given case.

Various other rules in HFCR Part D. also reference the parents' rights as parties to juvenile proceedings, including:

### Rule 138. Summons.

The parties shall be entitled to the issuance of compulsory process for the attendance of witnesses on their behalf or on behalf of the child.

### Rule 140. Order of Proceedings.

Before taking testimony, the court shall explain to the child and the child's parents their rights as set forth in Rules 154 and 155. . . .

### Rule 152. Presence and Exclusion of Parties.

Except in those hearings in which the child's behavior is not at issue, the child and a parent should be present at the commencement of hearings. If the child's behavior is not at issue, the hearing may, in the court's discretion, begin without the child's presence. If a continuance for the purpose of securing the attendance of a party or for any other reason is advisable to ensure a fair hearing, it should be granted. If for some reason found valid by the court no parent can be present, the court may appoint a guardian ad litem prior to the hearing.

### Rule 153. Notice to Children.

Whenever these rules authorize notices to be given to a 'child,' the word shall be construed to refer to a child 12 years of age or more or as defined by statute. If a child is less than 12 years old, the child's legal parent or parents, custodian or guardian shall receive the notices authorized by these rules. If the interests of the child and those of the parents appear to conflict, or if neither parent is available, the court shall appoint a guardian ad litem, or counsel, or both, to protect the interests of the child. Such a guardian or counsel shall receive the notices authorized by these rules.

### Rule 155. Right to Counsel.

The parties may be represented by counsel retained by them in all proceedings.

In all proceedings under HRS sections 571–11(1) and (2), the court may appoint counsel for the child in any situation in which it deems advisable.

(HFCR Rules 138, 140, and 153 quoted in relevant part.)

Moreover, various provisions in HRS Chapter 571 discuss the parents' interest in juvenile proceedings, such as (emphasis added):

**§ 571–23 Summons; notice; custody of minor.** After a petition under section 571–11(1) or (2) is filed in the interest of a minor, and after such investigation as the court may direct, *the court shall issue a summons,* unless the parties hereinafter named promise in writing to appear voluntarily, *requiring the person or persons who have the custody or control of the minor to appear personally and bring the minor before the court at a time and place stated.* If the person so summoned is not the parent or guardian of the minor, then the parent or guardian or both shall also be notified, by personal service before the hearing except as herein provided, of the pendency of the case and of the time and place appointed. Summons may be issued requiring the appearance of any other person whose presence, in the opinion of the judge, is necessary. If it appears that the minor is in such condition or surroundings that the minor's welfare requires taking the minor into custody, the judge may order, by endorsement upon the summons, or otherwise, that the person serving the summons shall take the minor into custody at once. *A parent or guardian is entitled to the issuance of compulsory process for the attendance of witnesses on the parent's or guardian's own behalf or on behalf of the minor.*

. . . .

**104**

**§ 571–41 Procedure in children's cases.** (a) Cases of children in proceedings under section 571–11(1) and (2) shall be heard by the court separate from hearings of adult cases and without a jury. Stenographic notes or mechanical recordings shall be required as in other civil cases in the circuit courts, unless the parties waive the right of such record or the court so orders. The hearings may be conducted in an informal manner and may be adjourned from time to time.

(b) Except as provided in section 571–84.6, the general public shall be excluded and *only such persons admitted whose presence is requested by the parent or guardian or as the judge or district family judge finds to have a direct interest in the case,* from the standpoint of the best interests of the child involved, or in the work of the court; . . . . *Prior to the start of a hearing, the parents,* guardian, or legal custodian, and, when appropriate, the child, the child victim, or witness *shall be notified of the right to be represented by counsel and the right to remain silent.*

. . . .

(e) *Upon a final adverse disposition,* if the parent or guardian is without counsel *the court shall inform the parent* or guardian *of the parent's* or guardian's *right to appeal as provided for in section 571–54.*

. . . .

**§ 571–48 Decree, if informal adjustment or diversion to a private or community agency or program has not been effected.** When a minor is found by the court to come within section 571–11, the court shall so decree and in its decree shall make a finding of the facts upon which the court exercises its jurisdiction over the minor. Upon the decree the court, by order duly entered, shall proceed as follows:

(1) As to a child adjudicated under section 571–11(1):

(A) The court may place the child on probation:

(i) In the child's own home; or

(ii) In the custody of a suitable person or facility elsewhere, upon conditions determined by the court.

When conditions of probation include incarceration in a youth correctional facility, the incarceration shall be for a term not to exceed one year, after which time the person shall be allowed to reside in the community subject to additional conditions as may be imposed by the court;

(B) *The court may vest legal custody of the child,* after prior consultation with the agency or institution, in a Hawaii youth correctional facility, in a local public agency or institution, or in any private institution or agency authorized by the court to care for children; or place the child in a private home. . . .

. . . .

(7) In support of any order or decree under section 571–11(1) or (2), *the court may require the parents* or other persons having custody of the child, or any other person who has been found by the court to be encouraging, causing, or contributing to the acts or conditions which bring the child within the purview of this chapter and who are parties to the proceeding, *to do or to omit doing any acts required or forbidden by law,* when the judge deems this requirement necessary for the welfare of the child. *The court may also make appropriate orders concerning the parents or other persons having custody of the child and who are parties to the proceeding. If such persons fail to comply with the requirement or with the court order, the court may proceed against them for contempt of court;*

. . . .

(13) *The court may order the parents of an adjudicated minor to make restitution* of money or services to any victim, person, or party who has incurred a loss or damages as a result of the child's action.

Finally, we note that Hawai'i has long recognized that parents have a substantive,

fundamental liberty interest in raising their children.

We affirm, independent of the federal constitution, that parents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawai'i Constitution. Parental rights guaranteed under the Hawai'i Constitution would mean little if parents were deprived of the custody of their children without a fair hearing ... Furthermore, the Supreme Court has said that parental rights cannot be denied without an opportunity for them to be heard at a *meaningful time and in a meaningful manner.* *In re Doe,* 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002) (footnote, citations, brackets, and internal quotation marks omitted); *see also Doe v. Doe,* 120 Hawai'i 149, 168, 202 P.3d 610, 629 (App.2009); *Doe v. Doe,* 116 Hawai'i 323, 334–35, 172 P.3d 1067, 1078–79 (2007) (citing several Hawai'i cases recognizing that parents have a fundamental liberty interest in the companionship, care, custody and management of their children); *In re Doe,* 77 Hawai'i 109, 114–15, 883 P.2d 30, 35–36 (1994) (recognizing parents' fundamental liberty interest in the care, custody, and management of their children).

▇ In sum, parents in juvenile proceedings conducted pursuant to HRS § 571–11(1): (1) are deemed parties; (2) have the right to compulsory process for the attendance of witnesses; (3) should be present at the commencement of hearings; (4) may have interests in the proceedings which appear to conflict with that of the child; (5) may be represented by counsel in all proceedings; (6) are issued a summons at the institution of proceedings; (7) may request the presence of other persons at proceedings; (8) shall be notified of the right to remain silent; (9) have a right to appeal; (10) are subject to the loss of legal custody of the child; (11) are subject to "appropriate orders" and may face contempt proceedings for failure to comply with such orders; (12) may be ordered to make restitution for loss or damage resulting from the child's action; and (13) have a substantive, fundamental liberty interest in the companionship, care, custody and management of their children. While this list may be incomplete, we conclude that it amply supports Parents' argument that they have standing throughout TC's juvenile proceedings conducted pursuant to HRS § 571–11(1).

### D. The Alleged Grounds for Dismissal

TC and Parents argue that the Family Court should have dismissed the Petition on the following grounds:

- The legislative intent of HRS §§ 707–730(1)(b) and 707–732(1)(b) precludes prosecuting children under fourteen-years old for violations of those provisions.

- TC's rights to equal protection and due process were violated because he was treated differently than the other boys involved in the sexual contact and sexual penetration and TC's adjudication was impermissibly selective prosecution.

- HRS §§ 707–730(1)(b) and 707–732(1)(b), as applied to private consensual acts between two persons, including minors, violates TC's right to privacy.

We will address each in turn.

### 1. HRS §§ 707–730(1)(b) and 707–732(1)(b)

▇ TC and Parents ask this court to reject what they admit is the plain, obvious, and unambiguous language of HRS §§ 707–730(1)(b) and 707–732(1)(b), arguing that a literal application of these statutes would produce absurd and unjust results because it would allow punishment of children for "consensual" sexual experimentation with other children. Notwithstanding any reservations we may have about the result in particular instances, we cannot ignore the plain language of the statutes in question. *See, e.g., Kaho'Ohanohano v. Dep't of Human Servs., State of Haw.,* 117 Hawai'i 262, 281, 178 P.3d 538, 557 (2008) ("Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning."). Although criminal sanctions are

clearly directed only at adult conduct,[14] the parties cite no Hawai'i legislative history that supports a conclusion that only adults were intended to be prohibited from the proscribed sexual conduct.

HRS § 707–730(1)(b) provides that a person commits the offense of sexual assault in the *first degree* if the person knowingly engages in *sexual penetration* with another person who is less than fourteen-years old, and HRS § 707–732(1)(b) provides that a person commits the offense of sexual assault in the *third degree* if the person knowingly subjects to *sexual contact* another person who is less than fourteen-years old or causes such a person to have sexual contact with the person. As discussed in prior cases, these statutory provisions are part of a series of sexual assault statutes that incorporate all of the sexual offenses into five degrees of sexual assault. *See State v. Buch*, 83 Hawai'i 308, 315, 926 P.2d 599, 606 (1996); *State v. Cardus*, 86 Hawai'i 426, 435, 949 P.2d 1047, 1056 (App.1997); *see also* HRS §§ 707–730 to 707–734 (1993 & Supp.2002). These statutes contain parallel conduct elements, which aid in our understanding of the statutory scheme. *See* HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.").

HRS § 707–730(1), for example, provides in part (emphasis added):

§ 707–730 **Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:

(a) The person *knowingly subjects* another person to an act of *sexual penetration* by *strong compulsion;*

(b) The person *knowingly engages in sexual penetration* with another person who is *less than fourteen* years old; or

(c) The person *knowingly engages* in *sexual penetration* with a person who is *at least fourteen* years old but *less than sixteen* years old; provided that:

(i) The person is *not less than five years older than the minor;* and

(ii) The person is not legally married to the minor.

Whereas, HRS § 707–732(1), provides in part (emphasis added):

§ 707–732 **Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:

(a) The person *recklessly subjects* another person to an act of *sexual penetration* by *compulsion;*

(b) The person *knowingly subjects to sexual contact* another person who is *less than fourteen* years old or causes such a person to have sexual contact with the person;

(c) The person *knowingly engages in sexual contact* with a person who is *at least fourteen* years old but *less than sixteen* years old or causes the minor to have sexual contact with the person; provided that:

(i) The person is *not less than five years older than the minor;* and

(ii) The person is not legally married to the minor;

In 1986, with the repeal and re-enactment of all of Hawai'i's sex crime statutes, the Hawai'i Legislature prohibited any person from sexually penetrating or having sexual contact with any person below the age of fourteen.[15] *See* 1986 Haw. Sess. Laws Act 314, § 57 at 617–18. In 2001, however, the Legislature effectively raised the "age of consent" but included an "age gap" requirement to avoid criminalizing consensual sexual conduct between certain teens.[16] *See* 2001 Haw.

**14.** Chapter 571 contains a distinct and separate scheme of statutory remedies for youthful offenders who are adjudicated to be law violators (or persons in need of supervision). *See* HRS §§ 571–48.

**15.** In the 1986 law, HRS § 707–730(1), for example, included "(b) The person knowingly subjects to sexual penetration another person who is less than fourteen years old" and no subpart (c).

**16.** In the 2001 law, HRS § 707–730(1), for example, was amended in relevant part as follows:

(b) The person knowingly [subjects to] engages in sexual penetration with another person who is less than fourteen years old; or

(c) The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less than sixteen years old; provided that:

Sess. Laws, Second Special Sess., Act 1, § 1 at 941; *see also* REPORT OF THE AGE OF CONSENT TASK FORCE (State of Hawai'i, Dept. of Attorney General; submitted to 22nd State Legislature, Regular Session of 2003, pursuant to 2001 Haw. Sess. Laws, Second Special Sess., Act 1, § 5). The 2001 legislative action maintained the prohibition against sexual contact or sexual penetration with a child under the age of fourteen, but added subpart (c) to HRS §§ 707–730(1) and 707–732(1) to prohibit consensual sexual contact or sexual penetration with a fourteen- or fifteen-year old only if the actor is five or more years older than the minor. With the 2001 amendment to allow sexual contact between older teens, the Legislature clearly could have also included, but did not include, language allowing consensual sexual conduct between, for example, two thirteen-year olds. Thus, we conclude that the legislative intent was to maintain the existing prohibition against such conduct and to rely on: (1) the distinction between adult criminal proceedings and juvenile family court adjudications; and (2) the proper exercise of prosecutorial and judicial discretion, to avoid criminalizing or unjustly penalizing sexual activities between children under the age of fourteen.

■ We decline the appellants' invitation to draw a different conclusion based on public policy arguments founded in studies of youthful sexual experimentation. Subject to constitutional restraints, it is the role of the Legislature to determine what conduct to prohibit as criminal. Indeed, the protection of all young children from sexual assault, regardless of the age of the offender, is not inconsistent with sound public policy. *See, e.g., Matter of Pima County Juvenile Appeal No. 74802-2,* 164 Ariz. 25, 32, 790 P.2d 723, 729 (1990) (abrogated on other grounds) ("We are persuaded that the state has a significant interest in proscribing sexual conduct between minors."); *In re James P.,* 115 Cal.App.3d 681, 685, 171 Cal.Rptr. 466, 468 (1981) ("As [the California statute] was enacted primarily to protect children from those influences which would tend to cause them to become involved in idle or immoral

conduct, it would be incongruous to claim, as appellant does, that the statute applies solely to adult violators.") (citations omitted); *P.G. v. State,* 616 S.W.2d 635, 641 (Tex.Civ.App. 1981) ("It would frustrate the intent of the statutes to hold that a child is protected from sexual abuse by adults, with or without his consent, but is not protected from sexual abuse by minors, with or without his consent. Children are entitled to no less protection from other children who sexually abuse them than they are from adults who sexually abuse them.")

### 2. *Equal Protection, Due Process, and Selective Prosecution*

■ TC argues that, pursuant to the Due Process and Equal Protection Clauses in the Fifth and Fourteenth Amendments to the United States Constitution and article I, § 5 of the Hawaii Constitution, all participants engaging in mutually consenting sexual contact and sexual penetration should be treated the same and prosecuted. Citing, *inter alia, State v. Kailua Auto Wreckers, Inc.,* 62 Haw. 222, 615 P.2d 730 (1980), TC and Parents argue that his Equal Protection and Due Process Clause rights were violated because a Chapter 571 petition was filed against him but not against Child # 1 and Child # 2, who also admittedly engaged in prohibited sexual conduct with TC, who was also a child under the age of fourteen. In *Kailua Auto Wreckers,* the Hawai'i Supreme Court held:

The burden of proving discriminatory enforcement of the law rests upon the party raising the defense. That party must present sufficient evidence to establish the existence of ***intentional or purposeful discrimination that is deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification.*** It is insufficient to show merely that other offenders have not been prosecuted, or that there has been laxity of enforcement, or that there has been some conscious selectivity in prosecution. Recognition of the defense will not permit the guilty to go free simply by showing that other violators exist. However, where a

---

(i) The person is not less than five years older than the minor; and

(ii) The person is not legally married to the minor.

defendant proves that there is no legitimate basis for a law's selective enforcement, the prosecutor's conduct will be subjected to the court's scrutiny.

*Id.* at 226–27, 615 P.2d at 734–35 (citations, footnotes, and internal quotation marks omitted; emphasis added).

■■■ TC argues that the State arbitrarily and improperly selected him for prosecution because the offenses "required strict liability in which all the participants should have been charged." TC misapprehends and intermingles two disparate legal principles. The "strict liability" concept stems from *Buch*, wherein the supreme court rejected defendant's argument that he thought the victim was older than thirteen and held that "strict liability with respect to the age of the victim in sexual assault offenses remains the rule . . . as a matter of public policy because of the need to protect children." *Buch*, 83 Hawai'i at 320, 926 P.2d at 622 (citations omitted; format altered). The selection of one of the potential law violators over another is not the type of arbitrary classification the supreme court had in mind when it referred to "an unjustifiable standard such as race, religion or other arbitrary classification." *Kailua Auto Wreckers*, 62 Haw. at 227, 615 P.2d at 734–35 (internal quotation marks omitted); *see also Carlisle v. Ten Thousand Four Hundred Forty–Seven Dollars in United States Currency*, 104 Hawai'i 323, 338, 89 P.3d 823, 838 (2004). It appears that TC was prosecuted based on allegations that TC was significantly older than Child # 1, had initiated the prohibited sexual activities with Child # 1 and Child # 2, and had engaged in multiple instances of prohibited sexual contact with more than one other child. Prosecutors may evaluate respective culpability, strength of witnesses and defenses, and perceived credibility, as well as consider the need to prevent future misconduct and the need for rehabilitative or educational services for accused juveniles. TC has failed to meet the burden of demonstrating that he was prosecuted based on an arbitrary classification. We conclude that the State's exercise

of prosecutorial discretion in this case was not constitutionally infirm.

### 3. *Right to Privacy*

■■■ TC argues that HRS §§ 707–730(1)(b) and 707–732(1)(b), as applied to private consensual acts between two persons, including minors, violates TC's right to privacy embodied in article I, § 6 of the Hawai'i Constitution [17] and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We recognize that minors, as well as adults, may have a right of sexual privacy. *See, e.g., City of Akron v. Akron Center for Reprod. Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); *Carey v. Population Srvs. Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). Consistent with the protections afforded by the United States Constitution, the State may, however, burden the privacy rights of a minor based on a less rigorous standard than the compelling interest test that applies to adults. *Carey*, 431 U.S. at 693 n. 15, 97 S.Ct. 2010. The State must show only that the restriction on the minor's rights serves a significant state interest. *Id.* at 693, 97 S.Ct. 2010.

The Hawai'i Legislature has determined that children under the age of fourteen are especially in need of protection from sexual activities, as evidenced by the specific provisions enacted to operate without regard to compulsion, consent, or even actual knowledge of the young person's age. *See, e.g.,* HRS §§ 707–730(1)(b) and 707–732(1)(b); *see also Buch*, 83 Hawai'i at 320, 926 P.2d at 611 ("children are fragile organisms that are subject to abuse and require vigilant protection") (internal quotation marks omitted; format altered). We will not disturb the Legislature's legitimate concern with the health, safety and social problems associated with young children's involvement in sexual conduct. Even assuming that older minors may enjoy greater sexual privacy rights (a matter which has not been addressed in this jurisdic-

---

**17.** "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The leg-islature shall take affirmative steps to implement this right." HAW. CONST art. I, § 6.

tion), we hold that the State has *at least* a significant interest in regulating the sexual activities of children under the age of fourteen.

As to the right of privacy in article I, § 6 of the Hawai'i Constitution, the Hawai'i Supreme Court has held that "a party challenging [a] statute has the burden of showing unconstitutionality beyond a reasonable doubt" and "only personal rights that can be deemed fundamental or implicit in the concept of ordered liberty are included in this guarantee of personal privacy." *State v. Mueller*, 66 Haw. 616, 627–28, 671 P.2d 1351, 1358–59 (1983) (internal quotation marks and citations omitted); *see also State v. Romano*, 114 Hawai'i 1, 11, 155 P.3d 1102, 1112 (2007). We reject TC's contention that we should apply to this case the rationale of a majority of the Florida Supreme Court in *B.B. v. State*, 659 So.2d 256 (Fla.1995), to find that young children have a fundamental privacy right to engage in sexual activity with other young children. In that case, the court held that a sixteen-year old had a legitimate expectation of privacy in engaging in "carnal intercourse" with another sixteen-year old. *B.B.*, 659 So.2d at 258–59; *accord In re G.T.*, 170 Vt. 507, 758 A.2d 301, 306–09 (2000). As later commented on by the Florida Supreme Court, the *B.B.* court found the statute in question "unconstitutional *as applied* to the unique facts of that case, including the fact that both the charged defendant and the alleged consenting victim were aged sixteen." *J.A.S. v. State*, 705 So.2d 1381, 1384 (Fla. 1998). In *J.A.S.*, the alleged victim was twelve. *Id.* at 1386. The Florida court held the defendant minor's privacy interest was "clearly outweighed by the State's interest in protecting twelve-year-old children from harmful sexual conduct, irrespective of whether the twelve-year old 'consented' to the sexual activity." *Id.* The court further stated:

> We simply cannot ignore the State's weighty interest in protecting twelve-year-old girls from harmful sexual conduct for reasons of health and quality of life, and from possible exploitation by the older minors.... [M]inors under sixteen have no unfettered right to engage in recreational sex with others under sixteen because the costs and risks to society and the children involved are far too great[.]

> Therefore, we conclude that [the Florida statute barring various sexual conduct with a child under the age of sixteen years old], as applied herein, furthers the compelling interest of the State in the health and welfare of its children, through the least intrusive means, by prohibiting such conduct and attaching reasonable sanctions through the rehabilitative juvenile justice system.

*Id.* (citations and internal quotation marks omitted; format altered).

 We similarly conclude that there is no fundamental personal privacy right for minors under the age of fourteen to engage in sexual activities with other children under the age of fourteen. Our conclusion applies to young boys, as well as young girls, and is not strictly dependent on an age differential between the children. Hawai'i's juvenile justice system has sufficient flexibility to impose appropriate rehabilitative, educational, and/or correctional remedies to address the circumstances and needs of a specific minor offender. Neither TC nor his Parents challenged on appeal the corrective measures imposed on TC by the Family Court.

### E. *Parents' Demand for Examination of Makers of Reports*

In their points of error, citing HRS § 571–41(d), Parents contend that the Family Court erred in denying their request to cross-examine the makers of written reports at the disposition hearing. Except as to the related issue of standing to make such a request, Parents failed to present any argument supporting the contention that the Family Court erred in denying the examination. Therefore, this issue is deemed waived. HRAP Rule 28(b)(7) (The opening brief shall include "argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.... Points not argued may be deemed waived.")

## V. CONCLUSION

TC's adjudication on Count VI is reversed. Because we conclude that TC's constitutional right to testify was violated, we vacate the Family Court's September 26, 2006 Decree as to the remaining counts and remand this matter for further proceedings consistent with this opinion.