231 P.3d 457

**In the Interest of N.C., a Minor.**

**No. 28294.**

Supreme Court of Hawai'i.

April 19, 2010.

As Corrected April 26, 2010.

186

Julie Kai Barreto, Kamuela, for petitioner/minor-appellant.

Linda L. Walton, Deputy Prosecuting Attorney, for respondent/plaintiff-appellee.

MOON, C.J., ACOBA, and DUFFY, JJ.; and RECKTENWALD, J., dissenting, with whom NAKAYAMA, J., joins.

Opinion of the Court by DUFFY, J.

On March 4, 2010, this court accepted petitioner/minor-appellant NC's (NC) timely application for writ of certiorari to review the June 26, 2009 summary disposition order of the Intermediate Court of Appeals (ICA) in *In re NC*, No. 28294, 2009 WL 1817400 (Hawai'i App. June 26, 2009) (SDO), which affirmed the Family Court of the Third Circuit's (family court's) September 26, 2006 decree [1] which adjudicated NC to be a status offender [2] pursuant to Hawai'i Revised Statutes (HRS) section 571–11(2) and placed NC on protective supervision of the family court.

NC's application presents the following question:

> Whether the appellate court should recognize "plain error" on appeal, as it did in Petitioner's brother's appeal from the identical underlying act and point of error, as the Family Court failed to engage in a *Tachibana*-like colloquy to obtain an on-the-record waiver of the right to testify, to remain silent, or to confront and cross-examine witnesses.

We hold that the family court erred in proceeding under HRS section 571–11(2) jurisdiction in this case based on the material allegations of the amended petition filed against NC. NC's substantial rights were violated when he was adjudicated for alleged law violations without the statutorily required recommendation of a qualified physician or psychologist, pursuant to HRS section 571–44, and without the constitutional protections that apply to proceedings conducted under HRS section 571–11(1) jurisdic-

---

1. The Honorable Aley K. Auna, Jr., presided.

2. At the time of the family court decree, Hawai'i Revised Statutes (HRS) section 571–2 defined "status offender," as it does now, as

> any child coming within the family court's jurisdiction under section 571–11(2)(B), (C), or (D). *Such child is distinguished from (A) a law*

*violator under section 571–11(1) who comes into the family court upon allegations such person has committed an act which would constitute a crime if committed by an adult,* and (B) a neglected child under section 571–11(2)(A) and (9) and chapter 587.

HRS § 571–2 (2006) (emphasis added).

tion. As such, the family court's adjudication of NC is plain error and must be reversed.

## I. BACKGROUND

This case arises from alleged incidents of sexual conduct between NC, a child who was between eight and nine years old at the relevant times, and another child (CW), who was approximately seven years old at the relevant times. What follows are the facts and procedural history relevant to the instant application.

### A. The Petitions

On August 4, 2004, the Office of the Prosecuting Attorney for the County of Hawai'i (prosecutor) filed a petition in family court pursuant to HRS chapter 571. The petition did not indicate the section of chapter 571 under which it was filed; however, the petition stated:

The above-named child appears to come within the purview of the HRS Section indicated above, in that *the child allegedly violated or attempted to violate the law in the following manner:*

#### COUNT I [ ]

Sometime between June 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with *thereby [sic] committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–732(1)(b),[3] [HRS], as amended.

#### COUNT II [ ]

Sometime between June 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, *thereby committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–732(1)(b), [HRS], as amended.

#### COUNT III [ ]

Sometime between August, 2003, and September, 2003, the exact date being unknown, in Kona County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, *thereby committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–732(1)(b), [HRS], as amended.

#### COUNT IV [ ]

Sometime between August, 2003, and September, 2003, the exact date being unknown, in Kona, County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, by knowingly subjecting [CW] to fellatio, *thereby committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–732(1)(b), [HRS], as amended.

(Emphases added.)

Although the petition did not specify the section of chapter 571 under which it had been filed, allegations that NC had committed an offense in violation of HRS section 707–732(1)(b) were consistent with a petition

---

**3.** At the time of the petition filed against NC, HRS section 707–732(1)(b) provided, as it does now:

(1) A person commits the offense of sexual assault in the third degree if:

. . . .

(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

HRS § 707–732(1)(b) (Supp.2004). "Sexual contact" was defined, as it is now, as "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts." HRS § 707–700 (Supp.2004). "Sexual penetration" was defined, as

(1) Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required; or

(2) Cunnilingus or anilingus, whether or not actual penetration has occurred.

*Id.*

filed pursuant to HRS section 571–11(1) (1993 & Supp.2004).

At the time of the petition, HRS section 571–11(1) provided, as it does now:

Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

(1) Concerning any person who is *alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance.* Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred[.]

HRS § 571–11(1) (emphasis added).

On September 29, 2004, the prosecutor amended the petition against NC. However, as with the original petition, the amended petition did not indicate the section of HRS chapter 571 under which the petition had been filed. The amended petition stated the following:

The above-named child appears to come within the purview of the HRS Section indicated above, in that *the child allegedly violated or attempted to violate the law in the following manner:*

The above-named child appears to come within the purview of the HRS Section indicated above, *by reason of the following facts:*

COUNT I [ ]

Sometime between June 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, thereby *committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic], [HRS], as amended, *brining [sic] him before this Court as a Person in Need of Supervision under Sections 571–11(2) and·571–44, [HRS], as amended.*

COUNT II [ ]

Sometime between June 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, thereby *committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic], [HRS], as amended, *brining [sic] him before this Court as a Person in Need of Supervision under Sections 571–11(2) and 571–44, [HRS], as amended.*

COUNT III [ ]

Sometime between August, 2003, and September, 2003, the exact date being unknown, in Kona County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, thereby *committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic], [HRS], as amended, *brining [sic] him before this Court as a Person in Need of Supervision under Sections 571–11(2) and 571–44, [HRS], as amended.*

COUNT IV [ ]

Sometime between August, 2003, and September, 2003, the exact date being unknown, in Kona, County and State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, thereby *committing the offense* of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic], [HRS], as amended, *brining [sic] him before this Court as a Person in Need of Supervision under Sections 571–11(2) and 571–44, [HRS], as amended.*

(Emphases added.)

The amended petition retained the original petition's allegations that NC had committed offenses in violation of HRS section 707–732(1)(b); however, it added language that appeared to assert family court jurisdiction pursuant to HRS section 571–11(2) (1993) and HRS section 571–44 (1993).

At the time of the petition, HRS section 571–11(2) provided, as it does now:

Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

. . .

   (2) Concerning any child [4] living or found within the circuit:

      (A) Who is neglected as to or deprived of educational services because of the failure of any person or agency to exercise that degree of care for which it is legally responsible;

      (B) Who is beyond the control of the child's parent or other custodian or whose behavior is injurious to the child's own or others' welfare;

      (C) Who is neither attending school nor receiving educational services required by law whether through the child's own misbehavior or nonattendance or otherwise; or

      (D) Who is in violation of curfew[.]

HRS § 571–11(2).

HRS section 571–44 states the following requirements before a child under the age of twelve can be adjudged to come within HRS section 571–11(1):

The court may order that a child or minor concerning whom a petition has been filed shall be examined by a physician, surgeon, psychiatrist, or psychologist, and it may order treatment, by them, of a child or minor who has been adjudicated by the court. For either the examination or treatment, the court may place the child or minor in a hospital or other suitable facility. The court, after hearing, may order examination by a physician, surgeon, psychiatrist, or psychologist, of a parent or guardian whose ability to care for a child before the court is at issue.

*No child under the age of twelve shall be adjudged to come within section 571–11(1) without the written recommendation of a licensed psychologist or of a psychiatrist or other physician duly qualified by spe-*

*cial training and experience in the practice of child psychiatry.*

HRS § 571–44 (emphasis added).

*B. Pretrial Proceedings*

On September 9, 2004, a summons was issued, pursuant to HRS section 571–11(2), for NC and his parents to appear before the family court on September 21, 2004.

On September 23, 2004, NC's parents, through their (parents') counsel, filed a motion to dismiss on the grounds that "a minor less than fourteen years old cannot commit the offenses charged." NC joined in the motion.

On December 7, 2004, a hearing was held on the motion to dismiss, and the family court orally denied the motion. On March 29, 2005, the family court filed a written order denying the motion which stated that the motion was treated as a motion filed by NC. In the family court's findings of fact and conclusions of law, the family court concluded, *inter alia*, that the sexual assault statutes at issue were "very specific and precise and are not vague, arbitrary, or discriminatory," and did not violate NC's due process rights.

The family court also concluded that "[b]ecause [NC] was under the age of 12 years old at the time *the alleged offenses* occurred, *Minor can only be adjudicated as a status offender pursuant to § 571–11(2),* H.R.S., as amended (also called a person in need of supervision). § 571–44, H.R.S., as amended." (Emphases added.)

On March 7, 2005, NC's parents filed a motion for reconsideration of the family court's denial of the motion to dismiss. NC filed a joinder in the motion for reconsideration on March 29, 2005. The family court orally denied the motion on April 19, 2005 and filed a written order on May 12, 2005.

On May 2, 2005, NC's parents filed a motion for leave to file an interlocutory appeal from the family court's denial of the motion to dismiss and denial of the motion for reconsideration. On May 20, 2005, NC filed a joinder in the motion for interlocutory appeal. The family court orally denied the

---

4. HRS section 571–2 provided, as it does now, that: " 'Child' or 'minor' means a person less than eighteen years of age." HRS § 571–2 (1993).

motion on May 24, 2005, and filed a written order on June 29, 2005.

### C. *Stipulated Evidence*

On October 4, 2005, the prosecutor and NC submitted a stipulation regarding the submission of evidence for the bench trial to the family court. The stipulation incorporated by reference the "Submission of Stipulated Evidence For Bench Trial, Exhibits 'A', 'B', and 'C' " filed with the family court in *In re TC,* stating, in relevant part

> WHEREAS, the police report(s), exhibits and other materials in [*In re TC* ], are the same police report(s), exhibits and materials that relate to the allegations in the instant case, [*In re NC* ]. In other words, this material is relevant evidence and will assist the Court in reaching a decision in above-entitled case.
>
> ACCORDINGLY, IT IS HEREBY STIPULATED AND AGREED that the "Submission Of Stipulated Evidence For Bench Trial" filed on or about August 25, 2005, in [*In re TC* ], is hereby incorporated by reference. The police report(s), exhibits and other materials shall be deemed as admissible evidence for the above-entitled Court to consider in the instant case, [*In re NC* ].

The stipulation was signed by the prosecuting attorney, NC's counsel, and NC.

### D. *Adjudication of NC as a Status Offender*

On October 4, 2005, the family court rendered its decision and adjudicated NC to be a status offender. Of relevance to the instant application, the family court stated the following, during the adjudication hearing:

> The Court further understands that in both of these cases involving [TC] and [NC], that *the parties waive their right to have an actual trial by presenting of live witnesses and other evidence, and instead offer to the Court for its consideration, evidence stipulated,* which would include, but certainly not limited to, the—all the police reports attached to as Exhibit B to the submission of stipulated evidence for bench trial filed ... on August 25, 2005, and Dr. Peter In's report submitted as Exhibit C attached to that document refer-

enced. *And that the minors did waive their ability to cross-examine any of the evidence presented by way of stipulation.*

(Emphases added.) The family court concluded that:

> Based upon all of the evidence presented, the Court further finds and concludes that *the State has met its burden in proving beyond a reasonable doubt each and every element of each count of the petitions, both of which were filed on April 3, 2004 [sic].*

The minors make no closing arguments with regards—and the parents make no closing arguments with regards to the contents contained in the exhibits that have been received into evidence. As the Court reviews the evidence presented, *in essence the minors have ... admitted to the allegations.*

Dr. In's letter, which is attached as Exhibit C, dated January 16, 2004, indicates a general denial of the sexual assault. However, the evidence contained in the police reports as stipulated into evidence shows completely otherwise, particularly in light of the admissions.

> Based upon the evidence as presented, the Court now does adjudicate [TC] as a law violator *and because of [NC's] age, he comes under the jurisdiction of the Court pursuant to the provisions of person in need of supervision.* So those would be the orders of the Court.

(Emphases added.)

### E. *Disposition*

On September 26, 2006, NC's disposition came on for hearing and the family court filed a decree regarding a person in need of supervision, stating:

> After full consideration of the admitted evidence the Court finds that *the material allegations of the petition(s) have been proved by a preponderance of the evidence* and that the minor is a status offender within the purview of HRS Section 571–11(2).
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED the minor be placed on protective supervision to the

Family Court until further order of the court with the following special conditions:

1. That minor attends all classes on time with no unexcused absences or tardies.

2. Minor shall attend counseling as deemed appropriate by the contracted Juvenile Sex Offender Treatment provider. These sessions will require parental participation and are in conjunction with therapy sessions that involve the minor's sibling.

3. Minor shall not be left unsupervised or solitary with any children under the age of 14. Upon approval of his therapist and probation officer, this condition may be modified.

4. Minor shall be restricted from possession or using sexually explicit media (pornography), female undergarments; or sexually explicit (pornographic) pictures of children.

5. Minor shall not be allowed out on his own, unsupervised without the presence of a parent or other responsible adult as designated by the therapist or probation officer, until such time as it is determined by the therapist or probation officer.

6. Minor shall have no contact with the victim or victim's family.

7. Minor shall contact his probation officer every other week by telephone and report for a face-to-face interview once a month until further directed by his probation officer.

(Emphasis added.)

F.  *Motion for Reconsideration*

On October 11, 2006, NC's parents filed a motion for reconsideration of the family court's decree. On October 24, 2006, the motion for reconsideration came on for hearing, and NC joined in the motion for reconsideration. NC did not add to the arguments provided in NC's parents' motion for reconsideration. The family court orally denied the motion at the close of the hearing.

On November 17, 2006, NC filed his notice of appeal from the family court's September 26, 2006 decree and its order denying the motion for reconsideration.

On December 19, 2006, the family court filed written findings of fact, conclusions of law and order denying the motion for reconsideration, stating in relevant part:

### FINDINGS OF FACT

1. A stipulated facts trial was held in this case between August 26, 20/05 [sic] and October 4, 2005, when a decision was rendered by the Court.

2. [NC] was born June 24, 1994, and thus *was age 11 at the time of the adjudication.*

3. The allegations against [NC] was that [sic] sometime between June 1, 2003 and October 23, 2003 (when [NC] was between age 8 and age 9, [sic] he subjected [CW] to sexual contact (4 counts)). [CW] was alleged to be under the age of 14. In fact he was born in April 1996 approximately two years younger than [NC], age 7 at the time of these incidents.

4. Based on the reports submitted, *the court found that the allegations were proven beyond a reasonable doubt.*

5. [NC] was found to be a person in need of supervision, *not a law violator, based on his age.*

6. Also considered as part of the stipulated facts trial was a January 16, 2004 letter from psychiatrist Peter In, which discussed the allegation and recommended long term therapy for [TC] and brief therapy for [NC].

7. The disposition ordered in this case included counseling, but not incarceration.

8. The parents of [NC] moved to reconsider the findings and rulings, arguing:

1) That the parents have standing in the child's case;

2) That the parents were entitled to question Denis Gershick MA, CSAC and Claude McDowell Psy. D, whose reports were considered at the disposition;

3) That the minors are victims or protected class members and cannot be prosecuted;

4) That HRS 571–11(1) cannot make noncriminal behavior criminal and

5) That finding the minor to be a law violator as a juvenile violated due process because the statute did not give a reasonable opportunity to know what was prohibited;

6) That the intent of HRS 707–730(1)(b) and 707–732(1)(b) is that the perpetrator be an adult and;

7) That the 2001 amendment to sexual assault laws applying to complainants between the ages of 14 and 16, and to perpetrators at least 5 years older than the complainant, should be applied to this case were [sic] both the complainant and the perpetrator were under the age of 14, and

8) That supervision of the minor was not warranted;

9. Although the court ruled that the parents did not have standing, each of the parents' arguments has been considered by the court because it was adopted by the minor. Therefore the issue of the parent's [sic] standing is moot.

### CONCLUSIONS OF LAW

1. The issue of the parent's [sic] standing is moot as the court has considered all arguments raised by the parents and adopted by the minors.

2. Hearsay, including reports of experts such as Gershick, McDowell and In, are generally admissible at sentencing or disposition proceedings and were properly considered in this proceeding.

3. There is nothing in the plain language of the statute under which minor was adjudicated which specifies that *the perpetrator of the crime* must be an adult, or that he must be older than the alleged victim.

4. HRS 571–11(2) specifies that a minor may be adjudicated under that section for any behavior committed prior to the age of 18, which is injurious to the welfare of the charged minor or to the welfare of others. Given the fact that *the statutes pertaining to sexual assault, which this minor is alleged to have violated* do not specify any minimum age for the perpetrator, nor any age difference between the complainant and perpetrator, *the minor was properly adjudicated under that section for behavior committed prior to the age of 18 that would constitute a violation of state law.* The court also finds that [NC's] behavior was injurious both to his own welfare and to that of [CW].

5. The Hawaii statutes pertaining to sexual assault are not so vague as to fail to give notice as to what is prohibited. Both sexual penetration and sexual contact with a person under the age of 14 are absolutely prohibited.

6. The court will not read into the statutes governing sexual assault, a requirement not put in those statutes by the legislature, i.e., that the person accused must be an adult. The legislature has shown itself quite capable of inserting minimum age differences by enacting subsection (c) of 707–730 and 707–732 pertaining to alleged victims between the ages of 14 and 16.

7. The fact that the legislature recognized that there might be sexual experimentation by minors between the ages of 14 and 16, which should not be punished criminally absent a 5 year age difference between the parties, does not mean that the legislature deemed it appropriate to allow sexual experimentation between minors younger than age 14. In this case there was an age difference of two years between [NC] and [CW], [CW] being approximately 7 years old at the time, the significantly older [NC] engaged in sexual contact with [CW] and subjected him to sexual penetration. Sexual experimentation of the type alleged and proven is not appropriate for 7 year olds or 9 year olds.

8. Supervision by the court is appropriate in this case. Dr. In recommended short term therapy for [NC]. Dennis Gershick, Barbara Mullen and Claude McDowell all recommended treatment for [NC], consisting primarily of education about healthy sexual relationships and boundaries. According to their evaluation

treatment readiness for change was rated at moderate risk because [NC] does not acknowledge that he did anything wrong, and does not perceive a problem or need to change. According to the letter from the father of [CW] he is very concerned about what he perceives as [NC's family's] pervasive denial about what occurred between the boys and unwillingness to get help. Accordingly, supervision of the minor is warranted.

(Emphases added.)

### G. Appeal to the ICA

On March 7, 2008, NC filed his opening brief with the ICA alleging five points of error: (1) The family court failed to establish that NC knowingly, intelligently, and voluntarily waived his constitutional rights in proceeding to trial on stipulated evidence; (2) The family court erred in ruling that NC and TC may be prosecuted as neither of them was a victim or part of a protected class; (3) The family court erred in ruling that HRS section 571–11(2) does not make noncriminal behavior criminal by increasing the minor's age; (4) The family court erred when it ruled that HRS section 707–732(1)(b) as applied to minors under the age of fourteen does not violate due process and equal protection clauses of the Constitution; and (5) The family court erred when it ruled that prosecuting minors less than fourteen years old under HRS sections 707–732(1)(b) did not produce an absurd and unjust result and that the statute did not require an adult perpetrator.

On June 26, 2009, the ICA filed its SDO in *In re NC*, No. 28294, which affirmed the family court's September 26, 2006 Decree. SDO at 9. Of relevance to the instant application, the ICA resolved NC's first point of error, alleging that the family court failed to establish that NC knowingly, intelligently, and voluntarily waived his constitutional rights in proceeding to trial on stipulated evidence, as follows:

We decline to recognize plain error regarding NC's waiver of his "constitutional rights" associated with the trial by stipulated evidence in this case. In his points of error, NC does not identify which particular constitutional rights he now seeks to assert, nor does he identify which constitution and/or constitutional provisions provide for such rights. NC makes *no* argument and cites no legal authority in support of the requested relief. Under these circumstances, we decline to recognize plain error. *See also* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

*Id.* at 6 (emphasis in original).

On October 28, 2009, the ICA filed its judgment on appeal. On January 25, 2010, NC filed the instant application. The prosecutor did not file a response.

## II. STANDARDS OF REVIEW

### A. Plain Error

■ This court has previously stated that "[w]e may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Kamanao,* 103 Hawai'i 315, 319–20, 82 P.3d 401, 405–06 (2003) (internal quotation marks omitted) (quoting *State v. Shinyama,* 101 Hawai'i 389, 395, 69 P.3d 517, 523 (2003)); *see also* Hawai'i Family Court Rules (HFCR) Rule 61 (2000);[5] Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1977) ("Plain errors or defects *affecting substantial rights* may be noticed although they were not brought to the attention of the court." (Emphasis added.)).

### B. Statutory Interpretation

■ It is well-settled that "[t]he interpretation of a statute is a question of law reviewable *de novo." Capua v. Weyerhaeuser Co.,* 117 Hawai'i 439, 443,

---

5. HFCR Rule 61 provides:
   No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise

disturbing a judgment or order, *unless refusal to take such action appears to the court inconsistent with substantial justice.* The court at every stage of the proceeding must disregard any error or defect in the proceeding *that does not affect the substantial rights of the parties.*
HFCR Rule 61 (emphases added).

184 P.3d 191, 196 (2008) (citing *Flor v. Holguin,* 94 Hawai'i 70, 76, 9 P.3d 382, 388 (2000)) (brackets, citations, and ellipses omitted). Statutory construction is guided by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Carlisle v. One (1) Boat,* 119 Hawai'i 245, 256, 195 P.3d 1177, 1188 (2008) (quoting *In re Contested Case Hearing on Water Use Permit Application,* 116 Hawai'i 481, 489–90, 174 P.3d 320, 328–29 (2007)) (block quotation format altered).

*State v. Woodfall,* 120 Hawai'i 387, 391, 206 P.3d 841, 845 (2009).

#### C. *Constitutional Questions*

■ "This court reviews questions of constitutional law under the right/wrong standard and, thus, exercises its own independent judgment based on the facts of the case." *State v. Mundon,* 121 Hawai'i 339, 349, 219 P.3d 1126, 1136 (2009) (brackets and internal quotations omitted) (quoting *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)).

6. HRE Rule 103(d) provided, as it does now, that "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although

### III. *DISCUSSION*

#### A. *The ICA Did Not Err When It Deemed That NC's Point of Error Had Been Waived.*

■ NC argues that the ICA gravely erred when it failed to include HRS section 571–11(2) status offenders among the juvenile defendants entitled to an on-the-record waiver of the right to testify in their own behalf.

As stated previously, the ICA cited HRAP Rule 28(b)(7) and declined to recognize this point of error, because NC made no argument and cited no legal authority in support of that point. SDO at 6.

HRAP Rule 28(b)(7) provides that

[w]ithin 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

. . . .

(7) The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. The argument may be preceded by a concise summary. *Points not argued may be deemed waived.*

HRAP Rule 28(b)(7) (2008) (emphasis added).

A review of NC's opening brief on appeal reveals that NC included the point of error that "[t]he family court reversibly erred in failing to establish that [NC] knowingly, intelligently, and voluntarily waived his constitutional rights to proceeding to trial on stipulated evidence." NC argued that "[t]he family court failed to colloquy [NC] regarding the relinquishment of the rights he waived by proceeding to trial in this manner."

NC appeared to cite *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998), as well as HRPP Rule 52(b) and Hawai'i Rules of Evidence (HRE) Rule 103(d),[6] for the standard of review for plain error. NC then argued that "[t]he family court's failure to

they were not brought to the attention of the court." HRE Rule 103(d) (1993).

colloquy [NC] and to obtain a valid waiver of his fundamental rights constituted reversible error."

The ICA was correct in stating that NC did not specify which of his fundamental rights had been violated during his adjudication as a status offender. SDO at 6. Also, NC did not indicate which constitutional or fundamental rights had been violated or which constitution provided those rights to status offenders. As a result, NC provided the "contentions" for this point of error, but did not articulate the corresponding "reasons" or provide the necessary "citations to the authorities ... relied on." HRAP Rule 28(b)(7).

Accordingly, the ICA did not err in deeming this point of error waived for failure to provide argument as required by HRAP Rule 28(b)(7).

B. *The ICA Plainly Erred When It Did Not Recognize That NC's Adjudication As A Status Offender Violated His Statutory And Constitutional Rights.*

NC argues in his application that the ICA erred when it declined to recognize as plain error the family court's failure to engage NC in a colloquy regarding the waiver of his right to testify.

For reasons discussed further herein, we conclude that NC's substantial rights were violated when he was adjudicated as a status offender upon allegations that he violated a criminal statute. As such, the ICA plainly erred when it did not recognize this violation of NC's statutory and constitutional rights. *See* HRAP Rule 40.1 ("The supreme court, at its option, may notice a plain error not presented."); *Kamanao,* 103 Hawai'i at 319–20, 82 P.3d at 405–06; HFCR Rule 61.

**1. HRS Section 571–11(2) Does Not Authorize Adjudications Based Upon Alleged Violations of Law.**

Of relevance to this discussion is how children's cases progress through family court pursuant to HRS chapter 571. HRS section 571–21 describes the initiation of a child's case, in relevant part, as follows:

(a) *Except as provided in subsection (b),* whenever the court is informed by any person that a minor is within the purview of section 571–11(1) or (2), *the intake officer shall make a preliminary investigation to determine whether informal adjustment is suitable under section 571–31.4 or 571–31.5.* The court may authorize the filing of a petition, may make whatever arrangement for informal adjustment that is suitable under section 571–31.4, 571–31.5, or 571–31.6; or may take such action as is otherwise allowed under this chapter. Efforts to effect informal adjustment may be continued not longer than three months without review by the judge.

(b) In cases of violation of a law or ordinance by a child, the issuance of a citation or summons, when provided by law or ordinance, shall be sufficient to invoke the jurisdiction of the court, which may proceed to dispose of such a case with or without preliminary investigation and the filing of a petition.

HRS § 571–21(a)–(b) (2006) (emphases added). Notably, the intake officer must initiate a preliminary investigation "whenever the court is *informed by any person* that a minor is within the purview of section 571–11(1) or (2)." *Id.* (emphasis added). This preliminary investigation may result in the intake officer affording the minor with an opportunity for an informal voluntary adjustment of behavior program *or* with the court authorizing the filing of a formal petition for a formal proceeding under HRS chapter 571. *Id.*

"Informal adjustment" is defined as:

the effort by intake officers, the courts, or others to provide a child referred to them or brought before them, and where appropriate that child's family, opportunity and aid *before and in lieu of formally processing* the child under this chapter. The objective of this effort is to afford opportunity and aid so that the child, and where appropriate the child's family, may realize *voluntary adjustment* of behavior and obtain counseling and edification so as to better allow the child's appropriate emergence into adult society.

HRS § 571–2 (2006) (emphases added). As defined by HRS chapter 571, informal adjust-

ment is a process that takes place prior to *and in place of* formal proceedings under HRS chapter 571. *Id.*

Importantly, the objective of informal adjustment is to realize "voluntary adjustment" of the child's behavior. *Id.* The voluntary nature of informal adjustment is further reflected in the preconditions that must be satisfied before this substitute for formal processing is available. For a child reasonably believed to come within the family court's jurisdiction under HRS section 571–11(1) or section 571–11(2) or both, informal adjustment "may be provided to the child by an intake officer duly authorized by the family court *only* where the facts reasonably appear to establish prima facie jurisdiction and are admitted and where a consent is obtained from the child's parent, guardian, or legal custodian, and the child, if of sufficient age and understanding." HRS §§ 571–31.4(a), 571–31.5(a) (2006) (emphasis added). Therefore, children reasonably believed to be status offenders, law violators, or both, may be allowed to *avoid* a formal action if: (1) the facts brought to the court's attention reasonably appear to establish prima facie jurisdiction, (2) the child admits to those facts, (3) the child's parent, guardian, or legal custodian consents to informal adjustment, and (4) the child, if of sufficient age and understanding, consents to informal adjustment. *See id.*

It is possible that facts revealed during a preliminary investigation may "reasonably appear to establish prima facie jurisdiction" under both HRS section 571–11(1) and HRS section 571–11(2). *See id.* In that case, HRS section 571–31.6 provides that

> [w]hen a child is reasonably believed to come within section 571–11(1) and (2), *the intake officer may exercise discretion to process informal adjustment under section 571–31.4 or 571–31.5.* In making that determination, the officer shall be guided by the criteria set out in section 571–31.1(c)(1) to (5), taking into account the availability of suitable method, program, or procedure for the child.

HRS § 571–31.6 (emphasis added).

Regardless of which informal adjustment process is selected by the intake officer, how-

ever, both HRS section 571–31.4 and section 571–31.5 provide the following:

> In the event resources and services for informal adjustment are not available, have failed, are reasonably believed to fail if attempted, or are unable to respond to the needs of the child or family, *the intake officer shall proceed with formal action, or take such action as is otherwise allowed under this chapter.*

HRS §§ 571–31.4(d), 571–31.5(b) (emphasis added).

### a. *formal actions in children's cases*

In formal actions, the procedure in children's cases is defined by HRS section 571–41. *See* HRS § 571–41 (2006). Unlike informal adjustment, the focus of HRS section 571–41 is not whether informally presented facts "reasonably appear to establish prima facie jurisdiction." *See* HRS §§ 571–31.4(a), 571–31.5(a). Rather, HRS section 571–41 focuses on the *allegations* of a petition filed with the family court. HRS section 571–41(c) provides, in relevant part:

> Findings of fact by the judge or district family judge of the validity of the allegations in the petition shall be based upon a preponderance of evidence admissible in the trial of civil cases *except for petitions alleging the court's jurisdiction under section 571–11(1)* which shall require proof beyond a reasonable doubt in accordance with rules of evidence applicable to criminal cases; provided that no child who is before the court under section 571–11(1) shall have admitted against the child any evidence in violation of the child's rights secured under the constitution of the United States or the State of Hawaii.

HRS § 571–41(c) (emphasis added).

As previously stated by this court, "[t]he family court is a court of limited jurisdiction and, as such, derives its authority from the statutes that created it." *In re Doe*, 96 Hawai'i 272, 284–85, 30 P.3d 878, 891 (2001) (citing *Cleveland v. Cleveland*, 57 Haw. 519, 520, 559 P.2d 744, 746 (1977); *In re Doe*, 86 Hawai'i 517, 520, 950 P.2d 701, 704 (App.1997)). HRS chapter 571 provides the family court with jurisdiction over children under specific circumstances defined by sec-

tion 571–11. Of relevance to this case, section 571–11(1) and section 571–11(2) provide separate bases for asserting family court jurisdiction with distinct requirements defined by statute.

### b. *section 571–11(1) jurisdiction*

HRS section 571–11(1) provides the family court with exclusive original jurisdiction for formal proceedings that "[c]oncern[ ] any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance." HRS § 571–11(1).

Formal proceedings under HRS section 571–11(1) may be initiated by a citation, summons, complaint, or petition alleging a violation of law or ordinance by the child. *See* HRS § 571–21(a)–(d) (2006).

### c. *section 571–11(2) jurisdiction*

By contrast, section 571–11(2) provides the family court with exclusive original jurisdiction for formal proceedings that

[c]oncern[ ] any child living or found within the circuit:

(A) *Who is neglected as to or deprived of educational services* because of the failure of any person or agency to exercise that degree of care for which it is legally responsible;

(B) *Who is beyond the control* of the child's parent or other custodian or *whose behavior is injurious* to the child's own or others' welfare;

(C) *Who is neither attending school nor receiving educational services required by law* whether through the child's own misbehavior or nonattendance or otherwise; or

(D) *Who is in violation of curfew* [.]

HRS § 571–11(2) (emphases added).

Notably, section 571–11(2) does not include allegations that a child has committed an act that would be considered a violation of the law. Further, HRS section 571–11(2) proceedings are not initiated by a citation or summons alleging a violation of the law. *See* HRS § 571–21(a)–(d). Moreover, HRS chap-

ter 571 explicitly distinguishes between the allegations that provide the family court with jurisdiction under section 571–11(1) and those that provide jurisdiction under section 571–11(2) in the following definition:

"[s]tatus offender" means any child coming within the family court's jurisdiction under section 571–11(2)(B), (C), or (D). *Such child is distinguished from (A) a law violator under section 571–11(1) who comes into the family court upon allegations such person has committed an act which would constitute a crime if committed by an adult,* and (B) a neglected child under section 571–11(2)(A) and (9) and chapter 587.

HRS § 571–2 (emphasis added).

■ Based on the definition of a "status offender" provided by statute, a child who comes into the family court upon allegations that he or she "has committed an act that would constitute a crime if committed by an adult" does not come within the family court's jurisdiction under section 571–11(2). *Id.* Indeed, research of Hawai'i case law does not reveal any appellate court decision that considered a petition brought solely under section 571–11(2) jurisdiction based on allegations that a child had committed acts that would constitute a crime if committed by an adult. *See, e.g., In re Doe,* 84 Hawai'i 41, 43, 928 P.2d 883, 885 (1996) (considering a petition filed under HRS section 571–11(2)(B) that alleged the child was beyond the control of her parents when she left home without permission); *In re Doe,* 96 Hawai'i 73, 75–77, 26 P.3d 562, 564–66 (2001) (considering a petition filed under HRS section 571–11(2)(C) that alleged forty-nine days of unexcused absences and a separate petition filed under HRS section 571–11(1) alleging criminal contempt of court).

### d. *distinct procedural requirements and differences*

There are significant procedural requirements and differences between jurisdiction based on section 571–11(1) and section 571–11(2). Of relevance to this case, HRS section 571–44 requires that: "[n]o child under the age of twelve shall be adjudged to come

within section 571–11(1) without the written recommendation of a licensed psychologist or of a psychiatrist or other physician duly qualified by special training and experience in the practice of child psychiatry." HRS § 571–44.

Importantly, the validity of allegations brought against a child pursuant to section 571–11(1) must meet a higher burden of proof than allegations brought pursuant to section 571–11(2). *See* HRS § 571–41(c) (providing that petitions alleging the court's jurisdiction under section 571–11(1) "shall require proof beyond a reasonable doubt in accordance with rules of evidence applicable to criminal cases; provided that no child who is before the court under section 571–11(1) shall have admitted against the child any evidence in violation of the child's rights secured under the constitution of the United States or the State of Hawaii").

Further, HRS chapter 571 provides different actions that the family court is authorized to take following the adjudication of a child under section 571–11(1) jurisdiction or under 571–11(2) jurisdiction. Of relevance here, a child adjudicated under section 571–11(1) may be placed on probation or fined. *See* HRS § 571–48(1) (2006). However, a child adjudicated under section 571–11(2) may not be placed on probation but may be placed under protective supervision. HRS § 571–48(2). Significantly, HRS chapter 571 defines "protective supervision" as

> a legal status created by court order *in proceedings not involving violations of law* but where the legal custody of the minor is subject to change, whereby the minor is permitted to remain in the minor's home or in a community residential or nonresidential program under the supervision of the court or an agency designated by the court and subject to return to the court during the period of protective supervision.

HRS § 571–2 (emphasis added).

■ In summary, the plain language of HRS chapter 571 provides the following relevant guidance: (1) section 571–11(2) does not provide the family court with jurisdiction for formal proceedings that involve allegations of violations of law, *see* HRS §§ 571–11(2), 571–2; (2) children alleged to have violated the law under section 571–11(1) must receive the constitutional protections and standard of proof beyond a reasonable doubt in accordance with rules applicable to criminal cases, *see* HRS § 571–41(c); and (3) formal proceedings that involve alleged violations of law are not appropriate for children under twelve years old unless a qualified physician or psychologist provides a written recommendation to the contrary, *see* HRS § 571–44.

## 2. The Family Court Erred In Adjudicating NC As A Status Offender Based On The Allegations Of The Amended Petition.

The family court's adjudication of NC as a status offender was not authorized by HRS section 571–11(2) jurisdiction and violated the requirements of HRS chapter 571.

NC did not receive informal adjustment in lieu of formal proceedings. Rather, as stated previously, the prosecutor filed a formal petition with the family court on August 4, 2004, which alleged that NC had "violated or attempted to violate the law" through four separate counts of "committing the offense of Sexual Assault in the Third Degree, in violation of Section 707–732(1)(b)."

On September 29, 2004, the prosecutor amended the petition to restate the four counts against NC as "committing the offense of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic], [HRS], as amended, brining [sic] him before this Court as a Person in Need of Supervision under Sections 571–11(2) and 571–44, [HRS][.]"

■ Although the amendments attempted to frame the petition under HRS section 571–11(2) jurisdiction, the allegations against NC continued to assert that he had violated HRS section 707–732(1)(b). The amended petition did not allege educational neglect, lack of control by NC's parents, nonattendance at school, or a violation of curfew. *See* HRS § 571–11(2)(A)–(D). Neither did the petition state that NC had engaged in behavior that was injurious to himself or others.

As set forth in HRS section 571–41(c), the allegations of the petition determine the burden of proof and the substantive rights that must apply to a formal action. HRS § 571–41(c). Allegations of law violations in a petition invoke a higher burden of proof and the presence of federal and state constitutional protections during the adjudication proceeding. *Id.* Therefore, based on the *allegations* of the amended petition, the family court was obligated to comply with the requirements of a formal proceeding conducted under HRS section 571–11(1) jurisdiction, as defined by HRS sections 571–41(c) and 571–44.

Nevertheless, the family court's September 26, 2006 decree found that NC was a status offender and that "the material allegations of the petition(s) ha[d] been proved by a preponderance of the evidence[.]" As the allegations against NC were based on law violations, HRS section 571–41(c) required that such allegations be proven beyond a reasonable doubt. HRS § 571–41(c). The family court appeared to acknowledge this requirement in its December 19, 2006 findings of fact, conclusions of law and order denying the motion for reconsideration where, in contrast to the decree, it stated that "[b]ased on the reports submitted, the court found that the allegations were proven beyond a reasonable doubt." The confusion created by the allegations against NC is further reflected when the order finds that "[NC] was found to be a person in need of supervision, not a law violator, based on his age[,]" yet concludes that "the minor was properly adjudicated under that section [of the statutes pertaining to sexual assault] for behavior committed prior to the age of 18 that would constitute a violation of state law."

Although the family court's September 26, 2006 decree and December 19, 2006 order both state that the allegations of law violations against NC had been proven, the record in this case reflects that NC was eleven years old at the time of his adjudication. As such, a written recommendation by a qualified physician or psychologist was required before NC could be adjudged to come within section 571–11(1) jurisdiction upon law violation allegations. *See* HRS § 571–44. The record in this case does not contain such a written recommendation.

Therefore, NC was adjudicated for alleged violations of a criminal statute in contravention of the protection provided for children his age by HRS section 571–44 and the constitutional protections applied to law violation proceedings by HRS section 571–41(c) and the decisions of Hawaiʻi's courts. *See In re Doe,* 62 Haw. 70, 72–73, 610 P.2d 509, 511 (1980) (recognizing "a juvenile's entitlement to adequate written notice, notification of a right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination at an adjudicatory stage" of proceedings which may result in commitment to a state institution, as established in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)); *In re TC,* 121 Hawaiʻi 92, 99–102, 214 P.3d 1082, 1089–92 (App.2009) (holding that a minor alleged, pursuant to HRS § 571–11(1), to have committed law violations shall be advised of his or her right to testify, and that, where he or she does not testify, the family court shall obtain an on-the-record waiver of that right).

Accordingly, the family court erred in proceeding under HRS section 571–11(2) jurisdiction based on the material allegations of the amended petition. NC's substantial rights were violated when he was adjudicated for alleged law violations without the statutorily required recommendation of a qualified physician or psychologist, HRS § 571–44, and without the constitutional protections that apply to formal proceedings conducted under HRS section 571–11(1) jurisdiction, *see In re TC,* 121 Hawaiʻi at 99–100, 214 P.3d at 1089–90; HRS § 571–41(c). As such, the family court's adjudication of NC is plain error. *See Kamanao,* 103 Hawaiʻi at 319–20, 82 P.3d at 405–06; HFCR Rule 61.

## IV.  CONCLUSION

Having concluded that NC's substantial rights were violated in this case, we vacate the ICA's June 26, 2009 SDO and October 28, 2009 judgment on appeal, and reverse the family court's September 26, 2006 decree.

Dissenting Opinion by RECKTENWALD, J., in which NAKAYAMA, J., joins.

I respectfully dissent. I share the majority's concerns with the deficiencies of the amended petition, but believe that the effect of those deficiencies was to deprive the family court of jurisdiction to adjudicate NC as a person in need of supervision (PINS) under HRS § 571–11(2)(B). *See Kapuwai v. City & County of Honolulu, Dep't of Parks and Rec.,* 121 Hawai'i 33, 40, 211 P.3d 750, 757 (2009) ("it is well-settled in this jurisdiction that, '[i]f the parties do not raise the issue [of a lack of subject matter jurisdiction], a court *sua sponte* will' ") (citation omitted; brackets in the original).

As an initial matter, I note that the majority opinion does not suggest that a child cannot, as a matter of law, be adjudicated as a PINS under HRS § 571–11(2)(B) (providing that the family court has jurisdiction over a child "[w]ho is beyond the control of the child's parent or other custodian or whose behavior is injurious to the child's own or others' welfare") based on conduct that also constitutes a law violation under HRS § 571–11(1) (providing that the family court has jurisdiction over "any person who is alleged to have committed an act prior to achieving the age of eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance"). *See* Majority opinion at 188–89, 231 P.3d at 461–62. I agree with that reading of chapter 571. In other words, there are categories of conduct that can both constitute a violation of the law and fall within the scope of HRS § 571–11(2)(B), and in such cases the petitioning party may proceed under either 571–11(1) or (2)(B), provided the petition contains the necessary allegations and those allegations are then established in the adjudication hearing.

The question in this case is whether the amended petition contained the necessary allegations. To answer that question, I begin by examining the statutes that confer jurisdiction on the family court, as well as the related rules. HRS § 571–11, concerning family court jurisdiction over children, provides in pertinent part as follows:

**Jurisdiction; children.** Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age *which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance.* Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.

(2) Concerning any child living or found within the circuit:

(A) Who is neglected as to or deprived of educational services because of the failure of any person or agency to exercise that degree of care for which it is legally responsible;

(B) *Who is beyond the control of the child's parent or other custodian or whose behavior is injurious to the child's own or others' welfare;*

(C) Who is neither attending school nor receiving educational services required by law whether through the child's own misbehavior or nonattendance or otherwise; or

(D) Who is in violation of curfew.

. . .

(Emphasis added).

HRS § 571–21(d) governs the content of the petition, and provides in pertinent part as follows:

In children's cases, under section 571–11(1) and (2), the petition . . . shall set forth plainly: (1) *the facts which bring the child within the purview of this chapter;* (2) the name, age, and residence of the child; (3) the names and residences of the child's parents; and (4) the name and residence of the child's legal guardian if there be one, of the person or persons having custody or control of the child, or of the nearest known relative if no parent or guardian can be found. If any of the facts required

are not known by the petitioner the petition shall so state. . . .

(Emphasis added).

HRS § 571–41 discusses the procedure to be followed by the family court in adjudicating petitions brought under HRS § 571–11(1) and (2), and provides in relevant part, in subsection (c), as follows:

> Findings of fact by the judge or district family judge *of the validity of the allegations in the petition shall be based upon a preponderance of evidence* admissible in the trial of civil cases *except for petitions alleging the court's jurisdiction under section 571–11(1) which shall require proof beyond a reasonable doubt* in accordance with rules of evidence applicable to criminal cases; provided that no child who is before the court under section 571–11(1) shall have admitted against the child any evidence in violation of the child's rights secured under the constitution of the United States or the State of Hawaii.

(Emphasis added).

It is apparent from these provisions that (1) the family court has jurisdiction in certain limited circumstances, which are specifically set forth in HRS §§ 571–11; (2) the petition must plainly set forth the facts that "bring the child within the purview of this chapter[;]" and (3) the court must determine the "validity of the allegations in the petition" by a preponderance of evidence in 571–11(2) cases, and beyond a reasonable doubt in 571–11(1) cases. Reading these provisions together, I conclude that the petition must, in order to establish the jurisdiction of the court, identify the specific provision(s) of 571–11 that are relied upon and the facts that bring the child within the scope of that provision(s).

This interpretation is consistent with Rules 121 to 158 of the Hawai'i Family Court Rules (HFCR), which govern "[j]uvenile [c]ases" in the family court "under HRS sections 571–11(1) and 571–11(2)[.]" HFCR Rule 81(b). Rule 121 sets forth definitions, and provides that " '[p]etition' means the legal document containing the allegations upon which the court's jurisdiction is based."

Rule 125 governs the "Contents of Petition," and provides that "[t]he petition shall set forth, in plain language and with reasonable particularity, the date, place, *and manner of the acts alleged and the law or standard of conduct allegedly violated.*" (Emphasis added). Thus, the rule recognizes that the petition must allege *both* the applicable "law or standard of conduct" *and* the acts that allegedly violated it.

Finally, Rule 140 recognizes that the allegations of the petition must be "sufficient" to establish jurisdiction:

**ORDER OF PROCEEDINGS.**

> . . .
>
> The court may . . . inquire of the child in a case brought under HRS section 571–11(1) or (2) whether the child admits or denies all or some of the allegations in the petition. Failure or refusal of the child to admit the allegations shall be deemed a denial of them.
>
> If any or all of the *allegations of the petition admitted by the child are sufficient to give the court jurisdiction,* the court may take testimony to corroborate the admission or otherwise to establish the allegations of the petition. If any of the *allegations of the petition required to be established to give the court jurisdiction* are denied by the child, the court may proceed to hear such evidence as is presented in support of such allegations and of the prayer of the petition. The court may order that any allegations denied by the child and which are not supported by adequate proof or not required to be heard be stricken from the petition. If the court is satisfied after consideration of all of the facts and circumstances presented that the prayer of the petition should be granted, it may then proceed with adjudication.

(Emphasis added).

The amended petition in this case is a two page document. The first page provides a pre-printed area at the top for the petitioner to check a box indicating whether the child "comes within the purview" of HRS §§ 571–11(1), 571–11(2), 571–44 and/or 571–48. In the instant case, none of those pre-printed boxes was checked. The first page further asserts that "[NC] appears to come within

the purview of the HRS Section indicated above, in that the child allegedly violated or attempted to violate the law in the following manner[.]"

The second page of the amended petition states that "[NC] appears to come within the purview of the HRS Section indicated above, by reason of the following facts[,]" then goes on to list the four counts against NC. Count I reads as follows:

Sometime between June 1, 2003, and October 23, 2003, the exact date being unknown, in Kona, County and the State of Hawaii, [NC] knowingly subjected to sexual contact [CW], a person who was less than fourteen years old, or caused [CW] to have sexual contact with him, thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic], Hawaii Revised Statutes, as amended, *brining [sic] him before this [c]ourt as a Person in Need of Supervision under Sections 571–11(2) and 571–44, Hawai'i Revised Statutes, as amended.* [1]

(Emphasis added).

Thus, it appears that the amended petition attempts to allege that NC was a PINS "under Sections 571–11(2) and 571–44," [2] based upon NC "committing the offense of Sexual Assault in the Third Degree, in violation of Section 707–7332(1)(b) [sic.]" As I noted above, chapter 571 does not preclude the filing of a petition invoking the jurisdiction of the family court under 571–11(2) based on conduct that would constitute a law violation under 571–11(1). However, the amended petition here was not sufficient to invoke the jurisdiction of the family court under 571–11(2), because it does not identify which aspect of the court's jurisdiction under 571–11(2) is applicable. While it could be argued that several of the possible grounds (truancy, violation of curfew, educational ne-

glect) are obviously inapplicable, there are two distinct grounds under 571–11(2)(B) that could provide a basis for adjudicating NC a PINS under the circumstances of this case ("beyond the control of the child's parent or other custodian" or "behavior [that] is injurious to the child's own or others' welfare"). However, the amended petition neither alleges that NC's conduct demonstrated that he is "beyond the control of [his] parent or other custodian" nor that his behavior is "injurious to [his] or others' welfare."

The failure to include that allegation is a jurisdictional defect that requires that the amended petition be dismissed. HRS § 571–21(d) requires that the petition plainly set forth the facts that "bring the child within the purview of this chapter[,]" but the amended petition does not do so. Similarly, HRS § 571–41(c)'s requirement that the family court enter findings regarding "the validity of the allegations in the petition[,]" implicitly recognizes that those allegations must be sufficient as a matter of law to establish the court's jurisdiction, but the allegations in the amended petition do not suffice. Also, HFCR Rule 125 requires the petition to set forth "with reasonable particularity, the date, place, and manner of the acts alleged and the law or standard of conduct allegedly violated." HRS § 571–11(2) incorporates or reflects many different standards of conduct, but the amended petition does not specify which one is alleged to apply. Although the amended petition does indicate what sections of the penal code NC's underlying conduct would violate, that allegation, without more, is insufficient to establish the family court's jurisdiction under HRS § 571–11(2).

This analysis is consistent with decisions from other jurisdictions that have considered the adequacy of petitions filed in similar proceedings. In *A Minor v. Juvenile Division of the Seventh Judicial District Court of the*

---

1. The other three counts, which apparently pertained to different acts of sexual contact with CW, reiterated the text of Count I. However, whereas Counts I and II included a range of dates from June 1, 2003 to October 23, 2003, Counts III and IV included a more limited range of dates, from August 2003 to September 2003.

2. HRS § 571–44 provides in relevant part as follows:

. . .

No child under the age of twelve shall be adjudged to come within section 571–11(1) without the written recommendation of a licensed psychologist or of a psychiatrist or other physician duly qualified by special training and experience in the practice of child psychiatry.

*State of Nevada,* 97 Nev. 281, 630 P.2d 245 (1981), the Nevada Supreme Court considered the validity of an adjudication of a juvenile as a Child in Need of Supervision (CHINS), based on the allegation that the juvenile had "disregarded proper instructions from his parent ... by becoming intoxicated and [was] beyond [the parent's] control, and [was] consiquently (sic) a child in need of supervision[.]" *Id.* at 247 (ellipses in original). The juvenile had been placed on probation as a result of that adjudication, and had later been sentenced to confinement based on violations of the terms of probation. *Id.* at 247–48. The court held that:

CHINS jurisdiction is dependent upon a showing, not of the violation of the criminal law, but rather upon a showing of a status or condition of the subject minor.

. . .

[I]t should have been charged and found that [the juvenile]:

1. "Habitually disobeys the reasonable and lawful demands of his parents ..."

2. "and is unmanageable; ..."

3. "and is in need of care or rehabilitation."

The petition refers not to [the juvenile's] habitual disobedience but rather to an isolated act of disobedience ("becoming intoxicated" on November 6, 1979). There is no allegation or mention of any "need of care or rehabilitation." With good reason the legislature does not permit the juvenile court to take jurisdiction over children in cases of single or isolated instances of disobedience; otherwise there would not be a child in the state immune from juvenile court intervention.

For these reasons, [the juvenile] has not been properly adjudicated a child in need of supervision[.] . . .

*Id.* at 251–52 (some ellipses in original).

Accordingly, the Nevada ·Supreme Court directed that the case be dismissed. *Id.* at 253. While this case is factually distinguishable in some ways from the instant case, nevertheless, the court's holding makes clear that the State's failure to adequately plead the allegations in a petition creates a jurisdictional defect that deprives the court of the ability to properly adjudicate the child a PINS.

Requiring specificity of pleading in petitions seeking to invoke the family court's jurisdiction under HRS § 571–11(2) ensures that the relevant issues in such proceedings are fully and fairly adjudicated. In the instant case, based on the record before us, it appears that it was not until very late in the proceedings—on a motion for reconsideration brought almost a year *after* the court had adjudicated the amended petition and determined that it had jurisdiction under HRS § 571–11(2)—that the family court or the parties gave serious consideration to exactly how NC's alleged conduct fit within the scope of that section. Up until that time, the parties appeared to assume that if NC's conduct constituted a violation of law if committed by an adult, he would then necessarily be a PINS under HRS § 571–11(2). Conversely, they seemed to assume that if his conduct did not constitute a violation of the law because both he and CW were under age 14, then the case would be at an end. No one appeared to recognize that the relevant issue was whether the alleged conduct, whether or not it would violate the law if committed by an adult, indicated that NC's behavior was injurious to his own welfare or that of others, or that he was beyond the control of his parents.

It was not until the court entered its December 19, 2006 Findings of Fact, Conclusions of Law and Order Denying Motion for Reconsideration that consideration appears to have been given to exactly how NC's conduct fit within HRS § 571–11(2), and even then, the court seemed to suggest that the question of whether that conducted violated the law could be dispositive:

*FINDINGS OF FACT*

. . .

5. [NC] was found to be a person in need of supervision, not a law violator, based on his age.

. . .

*CONCLUSIONS OF LAW*

. . .

3. There is nothing in the plain language of the statute under which the minor was adjudicated which specifies that the perpetrator of the crime must be an adult, or that he must be older than the alleged victim.

4. HRS 571–11(2) specifies that a minor may be adjudicated under that section for any behavior committed prior to the age of 18, *which is injurious to the welfare of the charged minor or to the welfare of others.* Given the fact that the statutes pertaining to sexual assault, which this minor is alleged to have violated do not specify any minimum age for the perpetrator, nor any age difference between the complainant and perpetrator, the minor was properly adjudicated under that section for behavior committed prior to the age of 18 that would constitute a violation of state law. *The court also finds that [NC's] behavior was injurious both to his own welfare and to that of [CW].*

5. The Hawaii statutes pertaining to sexual assault are not so vague as to fail to give notice as to what is prohibited. Both sexual penetration and sexual contact with a person under the age of 14 are absolutely prohibited.

6. The court will not read in the statutes governing sexual assault, a requirement not put in those statutes by the legislature, i.e. that the person accused must be and [sic] adult. The legislature has shown itself quite capable of inserting minimum age differences by enacting subsection (c) of 707–730 and 707–732 pertaining to alleged victims between the ages of 14 and 16.

7. The fact that the legislature recognized that there might be sexual experimentation by minors between the ages of 14 and 16, which should not be punished criminally absent a 5 year age difference between the parties, does not mean that the legislature deemed it appropriate to allow sexual experimentation between minors younger than age 14. In this case there was an age difference of approximately two years between [NC] and [CW], [CW] being approximately 7 years old at the time, the significantly older [NC] engaged in sexual contact with [CW] and subjected him to sexual penetration. Sexual experimentation of the type alleged and proven is not appropriate for 7 year olds or 9 year olds.

8. Supervision by the court is appropriate in this case. Dr. In recommended short term therapy for [NC]. Dennis Gershick, Barbara Mullen and Claude McDowell all recommended treatment for [NC], consisting primarily of education about healthy sexual relationships and boundaries. According to their evaluation treatment readiness for change was rated at moderate risk because [NC] does not acknowledge that he did anything wrong, and does not perceive a problem or need to change. According to the letter from the father of [CW] he is very concerned about what he perceives as [NC's] family's pervasive denial about what occurred between the boys and unwillingness to get help. Accordingly, supervision of the minor is warranted.

(Emphasis added).

Thus, the record shows confusion throughout the proceeding about the issues relevant to determining whether NC was a PINS under HRS § 571–11(2). That confusion could have been avoided or at least reduced had the amended petition been correctly pleaded in the first instance to allege how NC's conduct fit within the scope of HRS § 571–11(2). Since the State's failure to plead that allegation in the amended petition deprived the family court of jurisdiction, I conclude that the amended petition should have been dismissed.

My reasoning differs from the majority in that, while I interpret the amended petition as seeking (but failing) to invoke the family court's jurisdiction under HRS § 571–11(2), the majority interprets it as having the effect of invoking the court's jurisdiction under HRS § 571–11(1). Majority opinion at 198–99, 231 P.3d at 471–72. Thus, because the family court proceedings failed to comport with various requirements for adjudications under that provision, the majority concludes that the judgment cannot stand. Majority

opinion at 199, 231 P.3d at 472. I respectfully disagree with the majority's reasoning for three reasons. First, the amended petition plainly states that its objective is to have NC adjudicated as a "Person in Need of Supervision under Sections 571–11(2) and 571–44[.]" Second, from the time of the filing of the amended petition,[3] there is no indication in the record that NC was misled that the ultimate purpose of the proceeding was anything other than to determine whether he should be adjudicated as a PINS. Finally, although NC and the other participants may have been confused about the relevance of NC's alleged law violations to the determination of whether he was a PINS, NC was not in fact adjudicated as a law violator under HRS § 571–11(1); rather, the family court adjudicated him as a PINS under HRS § 571–11(2), and the family court's disposition was consistent with that adjudication and did not contain any provisions that could only be imposed on a law violator. *See* HRS § 571–48.

For the foregoing reasons, I would conclude that the family court lacked jurisdiction to adjudicate NC a PINS.

---

**3.** I note, however, that the original petition did not allege that NC was "a Person in Need of Supervision under Sections 571–11(2) and 571– 44," and thus appeared on its face to allege that NC was a law violator under HRS § 571–11(1).